**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAY S. GUNASEKERA, Ph.D.,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 06-CV-732** |
| | : | |
| **v.** | : | |
| | : | **JUDGE MARBLEY** |
| **DENNIS IRWIN, Ph.D.,** *et al*, | : | **Magistrate Judge King** |
| | : | |
| | : | |
| **Defendants.** | : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint.

Plaintiff Dr. Jay S. Gunasekera ("Dr. Gunasekera"), brought a complaint against Defendants

Dean Dennis Irwin and Provost Kathy Krendl (collectively "Defendants" or individually "Dean

Irwin" or "Provost Krendl") for damages under 42 U.S.C. § 1983 and for injunctive relief.

Specifically, Plaintiff alleges that Defendants violated the Due Process Clause by: (1)

suspending his Graduate Faculty status without notice and opportunity to be heard; and (2)

denying him a name-clearing opportunity.  For the reasons stated herein, Defendants' Motion to

Dismiss is **GRANTED**.

**II.  BACKGROUND**

Dr. Gunasekera led a distinguished academic career as the Moss Professor of Mechanical

Engineering at the Russ College of Engineering and Technology of Ohio University.  He served

as Chair of the Department of Mechanical Engineering for fifteen years.  But in 2004, a graduate

student alleged that candidates for advanced degrees in mechanical engineering committed

plagiarism in their masters and doctoral theses.  For two years the student's allegations filtered

through the academic bureaucracy, eventually reaching Krendl, Provost of Ohio University.  She

instructed Irwin, Dean of the Russ College of Engineering and Technology, to take action.  Dean

Irwin enlisted an administrator, Gary D. Meyer, and a distinguished retired faculty member,

Hugh L. Bloemer, to investigate the allegations.

On May 30, 2006, Meyer and Bloemer submitted their report ("Meyer/Bloemer Report")

to Dean Irwin and Provost Krendl.  The Meyer/Bloemer Report concluded that for over twenty

years, graduate students had committed rampant and flagrant plagiarism in theses submitted to

the Department of Mechanical Engineering for advanced degrees.  The report singled out three

faculty members, including Dr. Gunasekera, for ignoring their ethical responsibilities and

contributing to an atmosphere of negligence toward issues of academic misconduct.  The

following day, Provost Krendl held a press conference publicizing the Meyer/Bloemer Report

and implicating Dr. Gunasekera in the scandal.

On June 21, 2006, Dean Irwin suspended Dr. Gunasekera from Graduate Faculty status

for three years.  As a result, Dr. Gunasekera is prohibited from advising or evaluating graduate

student theses.  But Defendants did not cut Dr. Gunasekera's compensation, strip him of his

tenure, bar him from conducting research, nor prohibit him from teaching.  With the exception of

Graduate Faculty status, his position and duties remained unchanged.

Following the suspension of his Graduate Faculty status and the publication of the

Meyer/Bloemer Report, Dr. Gunasekera requested a name-clearing opportunity.  Particularly,

Dr. Gunasekera demanded that Defendants publicize the hearing with the same vigor as they

publicized the Meyer/Bloemer report, permit him to cross-examine university officials, provide

-2-

an impartial moderator to preside over the hearing, and hire a stenographer.  Defendants balked

at these conditions.  Instead, Defendants offered a name-clearing hearing at which Dr.

Gunasekera could be represented by counsel, call witnesses, offer documentary evidence, and

testify on his own behalf.  Denouncing the proposed name-clearing hearing as a sham

proceeding, Plaintiff declined to participate.

On August 9, 2006, Dr. Gunasekera brought a defamation action against the state of Ohio

in the Court of Claims.  On August 28, 2006, Dr. Gunasekera filed a complaint in this Court

against Dean Irwin and Provost Krendl.  Dr. Gunasekera alleges that Defendants violated the

Due Process Clause by: (1) suspending his Graduate Faculty status without notice and

opportunity to be heard; and (2) denying him a name-clearing opportunity.  Dr. Gunasekera

seeks injunctive relief including reinstatement of Graduate Faculty status, expungement of the

suspension from his record, and a meaningful name-clearing opportunity.  Dr. Gunasekera also

demands, pursuant to 42 U.S.C. § 1983, compensatory and punitive damages, back pay,

prejudgment and post-judgment interest, costs, and reasonable attorneys fees.  Defendants

brought this Motion to Dismiss Plaintiff's Complaint under Federal Rule 12(b)(6) for failure to

state a claim upon which relief may be granted.

### III.  STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating

whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a

cause of action.  *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983).  A complaint

should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff

can prove no set of facts in support of his claim which would entitle him to relief."  *Lillard v.*

*Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein."  *Conley*, 355 U.S. at 45-46.  While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  While liberal, this standard of review does require more than the naked assertion of legal conclusions.  *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993).  A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory.  *Scheid v. Fanny Candy Shop Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).

## IV.  LAW AND ANALYSIS

Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on four grounds: (1) sovereign immunity bars some of Plaintiff's claims; (2) Plaintiff waived his § 1983 claims for money damages in federal court by filing a defamation action in the Court of Claims; (3) Defendants are entitled to qualified immunity with regard to Plaintiff's § 1983 claims for money damages; and (4) Plaintiff's claims for equitable relief fail to allege a due process violation upon which relief can be granted.

### A.  SOVEREIGN IMMUNITY

Sovereign immunity, derived from the Eleventh Amendment[1] and flowing by "implication from the nature of sovereignty itself," *Keifer & Kiefer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 388 (1939), is a significant limitation on the judicial power of federal courts.  *See Alden v. Maine*, 527 U.S. 706, 713 (1999).  It is axiomatic that the Eleventh Amendment bars suits against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).  Sovereign immunity also precludes suits for money damages against state employees in their official capacities.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  The Supreme Court has devised three primary mechanisms for circumventing the Eleventh Amendment and freeing federal courts to police state compliance with federal law: (1) prospective injunctive relief; (2) waiver; and (3) congressional abrogation.  Erwin Chemerinsky, *Federal Jurisdiction* § 7.1 (5th ed. 2007).

### 1.  Official Capacity

First, sovereign immunity "does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law."  *Ernst v. Rising*, 427 F.3d 351, 358-59 (6th Cir. 2005) (en banc) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).  The rational is simple: "an official cannot be acting on behalf of the state when she acts illegally or unconstitutionally, and therefore is not entitled to the state's immunity."  *Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir. 1995) (quoting *Quern v. Jordan*, 440 U.S. 332 (1979)).

---

[1]The Eleventh Amendment to the United States Constitution provides:

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.

As such, *Ex Parte Young* permits a constitutional right "to serve as a sword, rather than merely as a shield, for those whom they were designed to protect." *Edelman v. Jordan*, 415 U.S. 651, 664 (1974).

Neither party disputes that Ohio University is a state instrumentality and therefore entitled to sovereign immunity. *See McIntosh v. University of Cincinnati*, 493 N.E.2d 321 (Ohio Ct. App. 1985). Similarly, neither party disputes that Provost Krendl and Dean Irwin are state officials. Therefore, the *Ex Parte Young* exception to sovereign immunity saves Plaintiff's claims for prospective equitable relief. Namely, Plaintiff seeks reinstatement to Graduate Faculty status, expungement of the disciplinary action from his record, and a meaningful name-clearing opportunity. Such relief would have only an "incidental or ancillary effect on the state treasury." *Edelman*, 415 U.S. at 663. Since Plaintiff's equitable claims do not threaten state coffers, the longstanding doctrine of *Ex Parte Young* ushers them into federal court.

But *Ex parte Young* does not apply to claims for retrospective relief against Defendants in their official capacities. *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 636 (2002). Nor do the two other primary exceptions to state sovereign immunity preserve Plaintiff's claims for money damages against Defendants in their official capacity. Generally, "if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). Although Ohio has waived state sovereign immunity by consenting to lawsuits brought in the Court of Claims, *See* Ohio Rev. C. § 2743(A)(1), it has not waived sovereign immunity in federal court. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Finally, Congress may abrogate state sovereign immunity pursuant to its powers under § 5 of the Fourteenth

-6-

Amendment.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).  But the Supreme Court

held that § 1983 does not explicitly abrogate the Eleventh Amendment.  *Pennhurst State School*

*& Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Thus, sovereign immunity clearly prohibits

Plaintiff's claim for money damages against Defendants in their official capacities.  *See*

*Kentucky v. Graham*, 473 U.S. 159 (1985).

2.  Individual Capacity

Plaintiff's claims for retroactive relief against Defendants in their individual capacities

are for the most part welcome.  Where "relief is sought under general law from wrongful acts of

state officials, the sovereign's immunity. . . does not extend to wrongful individual action, and

the citizen is allowed a remedy against the wrongdoer personally." *Ford Motor Co. v. Dep't of*

*Treasury of State of Indiana*, 323 U.S. 459, 462.  Accordingly, the "State sovereign immunity

does not preclude suits against state officials in their individual capacities for damages under §

1983." *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006); *accord Graham*, 473 U.S. at

159.  Therefore, Plaintiff's claims for compensatory and punitive damages against Defendants in

their individual capacities are cognizable in federal court.

But the Eleventh Amendment precludes Plaintiff's claims against Defendants for back

pay and fringe benefits.  The Eleventh Amendment "bars a suit against state officials when 'the

state is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101.  Regardless of the

form of pleading, a "plaintiff cannot receive retrospective relief from state officers sued in their

official capacities." *Edelman*, 415 U.S. at 666-69.  Thus, the Eleventh Amendment bars suits by

plaintiffs for back pay and other forms of retroactive relief that are in reality claims against the

state itself.  *See Pennhurst*, 465 U.S. at 101, n. 11.  Plaintiff can only bring an action for back

-7-

pay against Defendants's in their official capacities.  As a result, Plaintiff's claims against

Defendants for back pay and fringe damages must be dismissed.

In sum, sovereign immunity bars all but Plaintiff's claim for prospective equitable relief

against Defendants in their official capacities and Plaintiff's § 1983 claims for money damages

against Defendants in the individual capacities, excluding back pay and fringe benefits.

## B.  WAIVER

Defendants contend that Plaintiff waived his § 1983 claims in federal court by

concurrently bringing a defamation action against Ohio University in the Court of Claims.  In

*Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 952 (6th Cit.

1987) (en banc), the Sixth Circuit construed the Ohio Court of Claims Act ("O.C.C.A.") to

require a plaintiff, who files suit against the state in the Court of Claims, to waive related claims

against state officials in federal court.  Ohio Revised Code ("O.R.C.") § 2743.02(A)(1) provides:

> Except in the case of a civil action filed by the state, filing a civil action in the court
> of claims results in *complete* waiver of *any* cause of action, *based on the same act
> or omission*, which the filing party has against any officer or employee, as defined
> in section 109.36 of the Revised Code

(Emphasis added).

The Ohio legislature, in passing the O.C.C.A., waived the state's sovereign immunity so

long as plaintiffs litigated in a state forum.  *Portis v. Ohio*, 141 F.3d 632, 634 (6th Cir. 1998).

The statute created a quid pro quo whereby the "state consents to be sued in exchange for

plaintiff's waiver of claims against the state's employees."  *Id*.  This Faustian pact has its

attractions "when one considers the depth of the sovereign's pockets in comparison to the depth

of the servant's."  *Leaman*, 825 F.2d at 954.  As a result, a litigant's § 1983 claims against state

employees are waived in federal court if the litigant brings an action in the Court of Claims

-8-

arising from the same acts or omissions. *Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir.

1995). But O.R.C. § 2743.02(A)(1) does not bar a concurrent claim in federal court for

prospective equitable relief, even if the claim derives from the same facts. *Turker v. Ohio Dep't*

*of Rehabilitation & Corrections*., 157 F.3d 453, 459 (6th Cir. 1998).

Defendants contend that Plaintiff waived his § 1983 claims against Dean Irwin and

Provost Krendl by filing a defamation action against Ohio University in the Court of Claims.

Defendants argue that Plaintiff's § 1983 and defamation actions arise from the disciplinary

action imposed on Plaintiff as a result of plagiarism in the Department of Mechanical

Engineering. Defendants aver that Ohio University's decision to suspend Plaintiff from

Graduate Faculty status, deprive him of a name-clearing hearing, and allegedly defame him at a

press-conference are sufficiently related under O.R.C. § 2743.02(A)(1) to preclude Plaintiff's §

1983 claims in federal court.

Defendants rely on *Thomson v. Harmony*, 65 F.3d at 1319, for the proposition that

Plaintiff waived his § 1983 claims because his state and federal actions arise from the same

series of acts. Thomson, a clinical fellow at the University of Cincinnati College of Medicine,

was expelled from a research laboratory. *Id*., at 1316. Thomson brought a § 1983 claim in

federal court alleging that defendants violated his First Amendment rights and terminated him

without due process of law. *Id*., at 1317. Subsequently, Thomson brought an action in the Ohio

Court of Claims against the state of Ohio alleging breach of contract, defamation, and other state

law claims. *Id*.

The Sixth Circuit held that both the federal lawsuit and the action filed in the Ohio Court

of Claims were based on the same acts. *Id*., at 1320. While "recognizing that his different

-9-

complaints allege distinct causes of action, both derive out of the same acts or omission surrounding the discharge of Thomson and his loss of funding." *Id.*, at 1319.  The same "acts of retaliation by the defendants form the basis of his state court causes of action for defamation" as well as Thomson's § 1983 claim.  *Id*.  The Court considered it irrelevant whether the state and federal actions "share the same legal or theoretical foundation." *Id*.  Thus, pursuant to O.R.C. § 2743.02(A)(1), the Sixth Circuit found that Thomson waived his claims in federal court.  *Id*.  Defendants contend that in this case, Plaintiff's § 1983 claims and his defamation action similarly derive from Plaintiff's punishment.

But this case is sufficiently distinguishable from *Thomson*.  Plaintiff's § 1983 claims arise from two alleged deprivations of due process: (1) Defendants' suspension of Plaintiff's Graduate Faculty Status without notice and opportunity to be heard; and (2) Defendants' denial of a name-clearing opportunity.  By contrast, Plaintiff's defamation claim arises from the University's publication of the Meyer/Bloemer report.

Plaintiff's § 1983 claims do not rely on the University's decision to publish the Meyer/Bloemer report and would exist independently of this allegedly defamatory act.  The same is true vice versa: Plaintiff would present a cognizable defamation claim regardless of whether the University suspended his Graduate Faculty status or denied him a name-clearing opportunity.  Admittedly, both the state and federal actions arise from the same chain of events.  But the statute is unambiguous.  The O.C.C.A. only bars claims "based on the same act or ommission."  O.R.C. § 2743.02(A)(1).  The statute does not refer to 'series of acts or omissions.'  Federal claims arising from a related chain of events, but not the same act, are permitted under

-10-

the O.C.C.A.  Therefore, the Court finds that Plaintiff did not waive his § 1983 claims against Defendants by filing a defamation against the state in the Court of Claims.

### C.  QUALIFIED IMMUNITY

Qualified immunity, or "good faith" immunity, is an affirmative defense that a defendant state official may raise.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  The Supreme Court set an objective standard for the application of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Specifically, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818; *see also Burchett v. Keifer*, 310 F.3d 937, 942 (6th Cir. 2002).

The Court must conduct a two step analysis in resolving qualified immunity claims on a motion to dismiss.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004).  First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show that the [official]'s conduct violated a constitutional right?"  *Wilkie v. Robbins*, – U.S. – 127 S. Ct. 2588, 2617 (2007).  Second, the Court must "determine if the right was clearly established, such that a reasonable [official] would have known that his conduct was unlawful."  *Id.*; *see also Wilson*, 526 U.S. at 609; *Dunigan*, 390 F.3d at 491.   The application of qualified immunity is a matter of law to be decided by the Court on the preponderance of the evidence.  *See Hunter v. Bryant*, 502 U.S. 224, 537 (1991); *Crawford-El v. Britton*, 523 U.S. 574, 594 (1998).  Defendants contend that they are entitled to qualified immunity with respect to both Plaintiff's § 1983 claims.

-11-

**1. § 1983 Claim for Suspension of Graduate Faculty Status Without Due Process of Law**

To assert a valid §1983 claim, Plaintiff must "demonstrate that (1) plaintiff was deprived of a right secured by the Constitution or laws of the United States and that (2) the deprivation was caused by someone acting under the color of state law." *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 44 (1988)). Parties dispute only the first issue.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall. . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A due process inquiry requires two steps. First, the Court must determine whether Plaintiff has been deprived of a protected interest in property or liberty. *Bd. of Curators v. Horowitz*, 435 U.S. 78, 82 (1978). Second, the Court must determine whether the State's procedures comport with due process. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Plaintiff's first §1983 claim alleges that Defendants suspended him from Graduate Faculty status in violation of the Due Process Clause. For Plaintiff to prevail, the Court must find that Graduate Faculty Status is a constitutionally protected property interest and that Defendants deprived him of the interest without notice and opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Constitution does not create property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Rather, "property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."[2] *Cleveland Bd.*

---

[2]Commentators describe this approach as the 'positivist' method for defining property, "meaning that non-constitutional law establishes the terms and conditions under which individuals may acquire interests in property protected by the Due Process Clause." Thomas W.

*of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  Although "the underlying substantive interest is created by an independent source. . . federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

> While the existence of a constitutionally protected property interest is highly contextual, there are certain minimum requirements:

> > [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement* to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Roth*, 408 U.S. at 577 (emphasis added).  Although "property interests . . . are not limited by a few rigid, technical forms," *Perry v. Sindermann*, 408 U.S. 593, 601 (1972), the Due Process Clause's "procedural component does not protect everything that might be described as a benefit." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 749 (2005) (quoting *Roth*, 408 U.S. at 577).

> State law, contract, or a promise implied from circumstances, are generally sufficient to create a property interest protected by due process.  *See e.g.*, *Loudermill*, 470 U.S. at 538-39 (finding that a state statute, permitting employee dismissal only for cause, created a property interest in continued employment); *see also Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000) (holding that a collective bargaining agreement between school board and teachers union established a teachers' legitimate claim of entitlement to their positions at elementary school); *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1272 (6th Cir. 1988) (finding that a state statute and a

---

Merrill, *The Landscape of Constitutional Property*, 86 Va. L. Rev. 885, 920 (2000).

school board policy providing for accumulation of sick days by public employees created a property interest in those sick days);  *Connell v. Higginbotham*, 403 U.S. 207, 208 (1971) (holding that due process also protected non-tenured public employees retained by the promise of continued employment).

Plaintiff concedes that neither state law nor contract entitles him to Graduate Faculty status.  Instead, he implies a "legitimate claim of entitlement" from circumstances.  *Roth*, 408 U.S. at 577.  Plaintiff's claim to a property interest rests on two arguments:(1) that Graduate Faculty status is an indispensable condition of employment as a professor; and (2) that there existed a mutual understanding that Defendants did not have discretion to deny Graduate Faculty status once Plaintiff met the qualifying criteria.

### a. Indispensable Condition

Plaintiff contends that Graduate Faculty status is a *sine qua non* of employment as a tenured professor of mechanical engineering.  Graduate Faculty status authorizes professors at Ohio University to advise graduate student and to evaludate their theses submitted for masters or doctoral degrees.  Plaintiff alleges that a professor in his position performs most of his research through the assistance of graduate students.  Without Graduate Faculty status, Plaintiff avers that graduate students will not work in his laboratory.  As a result, Plaintiff concludes that his suspension hamstrings his ability to perform research and meet his grant obligations.  Unable to obtain grants or sponsors for research, Plaintiff alleges that he will be unable to secure a reduced teaching load, further impeding his research.  Thus, Plaintiff concludes that Graduate Faculty status is an indispensable condition of his contractually and statutorily protected position as a tenured professor.

-14-

Plaintiff offers *Newman v. Com. of Mass.*, 884 F.2d 19 (1st Cir. 1989 ) as a factually analogous case in which the First Circuit construed a protected property interest.  In *Newman*, as punishment for committing plagiarism, "plaintiff was [permanently] barred from voting on degrees and from serving on important university committees or as chair of her department." *Id.*, at 21.  The University also banned Newman from holding administrative office. *Id.*  The *Newman* court, finding that the punishment implicated due process, concluded that "this severe sanction substantially damaged plaintiff's property interest in her position." *Id.*  But the *Newman* ruling rested on the severity of the punishment, and in this case the sanction was less severe.  Defendants did not prohibit Plaintiff from serving on university committees, holding administrative office, or serving as department chair.[3]  Nor was Plaintiff's punishment permanent.  Further, there is more pertinent precedent.

In *Loudermill*, 194 F.3d at 544, the Supreme Court noted that the suspension of a tenured employee with pay may not implicate due process.  The Sixth Circuit, following this lead, found that a tenured police chief, suspended from duty with pay pending an investigation into allegations of misconduct, did not possess a property interest sufficient to confer due process protections. *Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In *Jackson*, the City of Columbus, notified of serious allegations of misconduct against police chief Jackson, reassigned him to his residence pending investigation.  194 F.3d at 744.  The City further ordered Jackson not to make any comments to the media and banished him from

_____

[3]Plaintiff concedes that he voluntarily resigned as Chair of the Department of Mechanical Engineering.

-15-

city property, including his office.  *Id*.  Like Plaintiff, Jackson brought a § 1983 due process

claim on the grounds that he had been suspended without due process of law.  *Id*., at 745.  Like

Plaintiff,  Jackson could not offer state law, a state statute, or a contractual provision which

created a property interest.  *Id*., at 749.  Like Plaintiff, he argued that circumstances, namely his

membership in the civil service, implicitly created a property interest.  *Id*.

Jackson had a stronger claim to a property interest than Plaintiff.  Unlike Plaintiff, the

city banished Jackson from his office.  *Id*.  Unlike Plaintiff, the City reassigned Jackson to a

location that precluded him from enjoying his contractually protected position as police chief.

*Id*.  Unlike Plaintiff, Jackson could not perform the bulk of his duties.  Unlike Plaintiff, Jackson

could not speak to the media.  In this case,  Defendants did not terminate Plaintiff, strip his

tenure, nor cut his compensation.[4]   Defendants did not revoke Plaintiff's authority to teach,

research, or obtain grants.  Jackson's suspension was undoubtedly more severe.  *Id*.  Yet the

Sixth Circuit did not construe a constitutionally protected property interest.  *Id*.  By contrast,

Plaintiff's deprivation is far less compelling.[5]

---

[4]Plaintiff's alleges indirect financial consequences arising from his suspension from
Graduate Faculty Status.  He contends that his suspension may prevent him from obtaining a
summer research stipend, and might lead to a denial of merit pay raise. The Seventh Circuit has
recognized that "suspension from a tenured position might produce indirect economic effects
that trigger the protection of the Due Process Clause."  *Luellen v. City of Chicago*, 350 F.3d 604,
614 (7th Cir. 2003).  But the Seventh Circuit held that the "temporary loss of [the] possibility for
additional income is [not] the sort of deprivation that tigers the protection of federal due
process."  *Id*.

Here, neither of Plaintiff's alleged financial harms has come to pass.  The anticipation of
possible but as yet unrealized pecuniary harm, self-evidently an indirect consequence of
Plaintiff's punishment, is too illusory to constitute a constitutionally protected property interest.

[5]Plaintiff also alleges that his suspension amounted to constructive discharge.  Plaintiff
cites a Title VII case, *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004), for the
proposition that an "employee's reasonable decision to resign because of unendurable working

Crucially, Defendants did not prohibit Plaintiff from enlisting graduate research assistants.  Plaintiff complains that graduate students will elect not to work in his laboratory because he would be unable to advise them on their theses.  But Plaintiff concedes that this deprivation is both hypothetical and incidental to the suspension.  The indirect nature of a benefit was fatal to the construction of a constitutionally protected property interest in *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 (2005), the Supreme Court's recent pronouncement on property interests under the Due Process Clause.

In *Castle Rock*, the Court found that an "individual's entitlement to enforcement of a restraining order could [not] constitute a property interest for the purposes of the Due Process Clause."  545 U.S. at 766.  Critically, the property interest arose incidentally out of a function "that government actors have always performed[:]. . . arresting people who they have probable cause to believe have committed a criminal offense."  *Id*., at 767.  *Castle Rock* has constitutional pedigree.  In *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787 (1980), the Court concluded that "an indirect and incidental result of the Government's enforcement action . . . does not amount to a deprivation of any interest in life, liberty, or property."  In *O'Bannon*, the Court held that while "withdrawal of direct benefits triggered due process protections, the same was not true for the indirect benefits conferred on Medicaid patients when the Government enforced 'minimum standards of care' for nursing-home facilities."  *Castle Rock*, 545 U.S. at 767.

---

conditions is assimilated to a formal discharge decision for remedial purposes."  Crucially, Plaintiff did not resign.  He still occupies his tenured position.  This is fatal to his constructive discharge claim.

Plaintiff's deprivation is similarly incidental to the suspension of Graduate Faculty status. Plaintiff argues that Graduate Faculty status is indispensable to his position because without it, students will avoid his laboratory and he will be unable to conduct research and obtain grants.  In effect, Plaintiff argues that Graduate Faculty status confers an entitlement to graduate research assistants.  But Defendants neither barred Plaintiff from hiring research assistants nor prohibited graduate students from working in Plaintiff's laboratory.  Just as in *Castle Rock* and *O'Bannon*, Plaintiff's deprivation is an indirect result of his suspension.  If Defendants had barred Plaintiff from enlisting graduate students, the inquiry might be different.  Since Plaintiff's deprivation is an indirect result of his suspension, and Graduate Faculty status is not sufficiently Indispensable to his professorship to implicate due process, the Court does not construe a property interest in Graduate Faculty status.

### b.  Discretionary Entitlement

Plaintiff also argues that he has a property interest in Graduate Faculty status because Defendants did not have discretion to revoke it, provided Plaintiff met the qualifications.  The Supreme Court recently confirmed that a "benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Castle Rock*, 545 U.S. at 756.  Plaintiff alleges that Defendants automatically awarded Graduate Faculty Status to any faculty member who met the Russ College of Engineering and Technology criteria, which require:

> 1. Ph.D. in an appropriate engineering field or related area;
> 2. Group 1 faculty status at Ohio University;
> 3. Having taught at least one year of advanced undergraduate or graduate level courses within the five years immediately preceding *nomination* for *appointment*; and
> 4.  Having demonstrated currency in the nominee's field of specialization through publication of at least five technical/professional journal or refereed conference papers, textbooks or monographs within the five years immediately preceding *nomination* for

*appointment*; or having served as Principle or Co-Principle investigator on externally
funded activity.

(emphasis added).  Plaintiff currently meets the criteria, as he did at the time of his suspension.

The Supreme Court has established that "specified substantive predicates" may be
sufficient to limit discretion and thus create a property interest in the expected benefits.
*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989).  Plaintiff argues that the
substantive criteria governing the appointment to Graduate Faculty status cabined Defendants'
discretion to revoke the benefit from qualified faculty.  In other words, upon satisfying the
criteria, Plaintiff became entitled to Graduate Faculty status.

But the *Thompson* court noted that for "specified substantive predicates to limit
discretion," they  must be accompanied by "explicitly mandatory language" in order to create a
protected interest.  *Id*.  To cabin discretion and create a property interest, the criteria must
contain "specific directives to the decision maker that if the regulations' substantive predicates
are present, a particular outcome *must* follow. . . ."  *Id*. (emphasis added); *see also Hewitt v.
Helms*, 459 U.S. 406, 471-72 (1983) (protected interest where regulations mandated that certain
procedures be followed if predicate conditions are met).

*Thompson* undermines Plaintiff's claim.  The Graduate Faculty criteria, while specifying
the qualifications for appointment, do not contain any language restricting or eliminating
Defendants' discretion.  Absent from the criteria is the "explicitly mandatory language" or a
specific directive to Defendants that if the criteria are met, the faculty member *must* be appointed
to the Graduate Faculty.  *Thompson*, 490 U.S. at 463.  The language of the criteria suggests
otherwise: candidates must be 'nominated' and then 'appointed' to Graduate Faculty status.  If
professors were entitled to Graduate Faculty status upon satisfying the criteria, no nomination or

-19-

appointment would be necessary.  Certainly, the criteria do not contain explicitly mandatory language, which according to *Thompson*, would be necessary to create a protected interest and implicate due process.  *Id*.

 Neither is it dispositive that, to Plaintiff's knowledge, Defendants have never denied Graduate Faculty status to a professor who met the criteria.  The fact that discretion is dormant is not proof that it is absent.  In fact, discretion could be reserved for just such a situation as Plaintiff presents: where a faculty member's academic or ethical failure does not merit Graduate Faculty status even though he meets the criteria for appointment.

Plaintiff also argues that Ohio University's custom is not to suspend faculty members who meet the criteria.  In *Perry v. Sindermann*, the Court held that although a professor lacked a contractual right to tenure, he was entitled to procedural due process because university regulations created a de facto tenure program giving rise to a property interest.  408 U.S. at 593.  The *Perry* Court found that a "mutually explicit understanding" grew out of university guidelines that permitted the dismissal of a professor only for cause.  *Id*., at 600.  While the guidelines did not explicitly grant tenure, the Court held that they created a property interest.  *Id*., at 601.  Plaintiff asserts that Defendants have never denied Graduate Faculty status to a faculty member who met the criteria.  Plaintiff contends that this custom created a "mutually explicit understanding" sufficient to create a property interest.  *Id*.

But *Perry* is inapposite.  In *Perry*, the regulations restrained discretion, effectively prohibiting dismissal without cause.  Here, the guidelines merely set the criteria for attaining a benefit.  In this case, there is no similar language prohibiting revocation of Graduate Faculty status without cause.  As discussed above, the terms 'nomination' and 'appointment' suggest

-20-

discretion.  If Defendants had discretion in appointing the benefit, absent any further regulation, they certainly had discretion to revoke it.

In sum, Graduate Faculty status does not constitute a constitutionally protected property interest.  Neither contract, state law, nor state statute entitle Plaintiff to the benefit.  The circumstances presented are insufficient to create a property interest.  Plaintiff's Graduate Faculty status is not an indispensable condition of his professorship.  The Sixth Circuit has found that more severe suspensions fall short of implicating due process.  *See Jackson*, 194 F.3d at 744. Further, the deprivation of which Plaintiff complains is an indirect result of his suspension. Moreover, Defendants retained discretion to revoke or grant Graduate Faculty status.  University guidelines were insufficient to cabin discretion or to create a mutually explicit understanding of entitlement.   Thus, Graduate Faculty status is not a property interest, and Plaintiff's suspension does not implicate due process.  As a result, it is unnecessary to determine whether Defendants denied Plaintiff adequate procedural protections.[6]  Because the Court does not find a constitutional violation, Defendants are entitled to qualified immunity with regard to this claim.[7]

## 2.  § 1983 Claim for Denial of a Name-Clearing Opportunity

_____

[6]The Court does not reach the question of whether the post-deprivation procedures, which Defendant offered but Plaintiff rejected, would be sufficient to satisfy due process.

[7]Even if the Court found that Graduate Faculty status constitutes a protected property interest, this interest is not clearly established.  The Supreme Court has noted that it "has not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Defendants did not have reasonable notice that their conduct was unlawful.  Thus, Defendants are entitled to qualified immunity regarding Plaintiff's § 1983 claim that he was denied due process of law in the suspending Plaintiff's Graduate Faculty status.

-21-

Plaintiff also brings a § 1983 claim alleging that Defendants denied him a name-clearing opportunity. Plaintiff's "reputation, good name, honor, and integrity are among the liberty interests protected by the Due Process Clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). If a public "employer creates a false and defamatory impression about [an employee] in connection with his suspension," the employee is entitled to a name-clearing opportunity. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002). Denial of a name-clearing hearing constitutes a deprivation of a liberty interest without due process. *See Brown v. City of Niota*, 214 F.3d 718, 722-23.

To prevail, Plaintiff must show that he was entitled to a name-clearing opportunity because Defendants created a false and defamatory impression about him in connection with his suspension. *See Quinn*, 293 F.3d at 320. Second, Plaintiff must show that the name-clearing hearing that Defendants offered, but Plaintiff rejected, was insufficient under the Due Process Clause. *Id.* Even assuming, arguendo, that Plaintiff has been deprived of a liberty interest, due process does not entitle him to a hearing beyond what Defendants already offered. Plaintiff rejected this opportunity. He is not entitled to another.

The purpose of a "name-clearing hearing is to afford the aggrieved employee an opportunity to be heard to refute the charges disseminated against him." *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997). The hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Quinn*, 293 F.3d at 321. After all, "due process is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895

-22-

(1961).  Rather, due process "is flexible and calls for such procedural protections as the particular situations demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

At a minimum, due process requires notice and the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).  In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court promulgated a three-factor balancing test to determine what process is constitutionally due.[8]  Subsequently, the Supreme Court adapted the *Mathews* factors to the context of faculty discipline in public institutions.  *See Ingraham v. Wright*, 430 U.S. 651, 676 (1977).  Accordingly, the Court must weigh: (1) the severity of the punishment, (2) the danger of erroneous deprivation, and (3) the burden on the university of additional procedures.  *Id*.  The *Mathews* factors shape the Court's discussion.

First, although the sanctions against Plaintiff are serious, Defendants did not terminate Plaintiff, cut his compensation, nor strip him of his tenure.  Thus, the severity of the punishment militates against an elaborate adversarial proceeding.  Second, the risk of error was minimal.  Defendants never alleged that Plaintiff intended to commit plagiarism, assisted in committing plagiarism, or instructed students to commit plagiarism.  If the punishment turned on Plaintiff's intent, actions, or instructions, due process would require greater procedural safeguards.  *See Mathews*, 425 U.S. at 335.

Instead, Defendants punished Plaintiff for his failure to act: students flagrantly and repeatedly committed plagiarism in scholarship that Plaintiff had a duty to monitor.  It is

---

[8]The *Mathews* factors require the Court to consider: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest."  424 U.S. at 335.

undisputed that Plaintiff presided over a large number of allegedly tainted theses.  Therefore, the

only question was whether the students, who Plaintiff was supposed to supervise, committed

plagiarism.  Plaintiff's testimony is not particularly relevant.  Rather, the inquiry is driven by

comparing the suspect theses with the works from which the students allegedly plagiarized.

Defendants minimized the risk of error by commissioning an independent investigation to

evaluate thoroughly the suspect theses.

Moreover, Defendants offered Plaintiff a name-clearing opportunity with sufficient

procedural safeguards.  Defendants proposed a name-clearing hearing in which Plaintiff would

be permitted to produce witnesses, to submit documentary evidence, to testify on his own behalf,

and to be represented by counsel.  But Plaintiff was not satisfied.  He demanded:

- A public name-clearing hearing with notice circulated in same way (and to the same media outlets) that Ohio University publicized the Meyer/Bloemer report.
- The right to cross-examination.
- An impartial moderator.
- A stenographer to record the hearing.

Defendants rejected Plaintiff's demands.  As a result, Plaintiff refused to participate in the name-

clearing hearing, contending that it did not comport with the minimum due process requirements.

This argument has no merit.

Disciplinary hearings against "faculty are not criminal trials, and therefore need not take

on many of those formalities."  *Flaim v. Med. College of Ohio*, 418 F.3d 629, 635 (6th Cir.

2005).  Plaintiff demanded that Defendants notify the media of his name-clearing hearing.

Specifically, he commanded that Defendants publicize the hearing with the same vigor as

Defendants publicized the Meyer/Bloemer report.  Defendants demurred, but consented to a

-24-

public hearing, which was more than due process required.[9]  Courts "have been generally unanimous. . . in concluding that hearings need not be open to the public." *Flaim*, 418 F.3d at 629; *see also Hart v. Ferris State Coll.*, 557 F. Supp. 1379, 1389 (W.D. Mich. 1983) (finding that due process did not require a public hearing).  Defendants were under no obligation to open the hearing to the public, let alone drum up press attention.  Besides, Plaintiff was free to notify the media and journalists were free to attend the hearing.  Ultimately, the Constitution does not require that employees have the same opportunity to restore their name as their employer's had to tarnish it.

Second, Plaintiff demanded the right to cross-examination.  The Sixth Circuit has stated that the Constitution does not generally confer the right to cross-examination in a school disciplinary proceeding.  *Flaim*, 418 F.3d at 641; *see also Jaska v. Regents of Univ. of Mich.*, 597 F.Supp. 1245 (E.D. Mich. 1984), *aff'd* 787 F.2d 590 (6th Cir. 1986).  In *Flaim*, the Sixth Circuit noted that cross-examination might be essential for a fair fearing if the case hinged on a problem of credibility.  418 F.3d at 641.  But this case does not present a choice between believing the accuser or the accused.  Plaintiff's intent, actions, or instructions are not at issue. The case depends on whether students, supposedly under Plaintiff's supervision, repeatedly and grossly flaunted Ohio University's ethical standards.  Defendants punished Plaintiff for his failure to act.  As credibility was not at issue, cross-examination would be a fruitless exercise. Thus, due process does not entitle Plaintiff to cross-examination in this context.

---

[9]Plaintiff contends Defendants denied him a public hearing.  But according to Plaintiff's Exhibit C, Defendants conceded that "Dr. Gunasekera may bring *anyone he wishes* to the meeting, providing we plan to stay within 1:00 - 2:00 PM time frame, and Ohio University cannot "compel" the attendance of anyone." (Emphasis added).  Ultimately, the dispute is immaterial because Plaintiff was not entitled a public hearing.

Third, Plaintiff demanded an impartial moderator.  Until proven otherwise, the Court "must start with the assumption that government employees tasked with performing an adjudicatory or quasi-adjudicatory function will do so fairly and impartially." *Rosen v. Goetz*, 410 F.3d 919, 930 (6th Cir. 2005) (*citing Schweiker v. McClure*, 456 U.S. 188, 196-97 (1982) (holding that courts "must start [ ] from the presumption that [ ] hearing officers ... are unbiased")).  Plaintiff has not offered any evidence to suggest that Provost Krendl, Dean Irwin, or any other potential adjudicator would have been unfairly prejudiced against Plaintiff's case. In light of the presumption that Provost Krendl and Dean Irwin would have presided over the hearing fairly and impartially, due process does not require Defendants to provide an impartial moderator.

Fourth, Plaintiff demanded that Defendants provide a stenographer.  The Sixth Circuit has cautioned that it "is always wise to produce some sort of record of the proceedings, whether it be a transcript or a recording, though a record may not be constitutionally required." *Flaim*, 418 F.3d at 636.  Fundamental fairness "counsels that if the university will not provide some sort of record, it ought to permit the accused to record the proceedings if desired." *Id*.  Although Defendants refused to provide a stenographer, but Defendants did not prohibit Plaintiff from bringing his own.  Nor did Defendants bar Plaintiff from recording the proceeding.  Typically, a written summary of testimony, evidence, and the decision is sufficient to satisfy due process. *See Id.*; *see also Gorman v. Univ. of R.I.*, 837 F.2d 7, 15-16 (1st Cir. 1988) (finding that due process did not require university to permit student to tape-record the hearings).

Ultimately, Defendants offered Plaintiff more than he was due.  Defendants were under no obligation to permit Plaintiff's attorney to represent him in the name-clearing hearing.  *See*

*Flaim*, 418 F.3d at 640. Defendants were also under no obligation to produce documents in preparation of the hearing. *Id*. Plaintiff could have made his case by testifying on his own behalf, calling supporting witnesses, and offering documentary evidence. Plaintiff clearly had the opportunity, mandated by due process, to "respond, explain, and defend." *Gorman*, 837 F.2d at 13.

The probability is small that additional procedural safeguards would result in a better decision. *See Mathews*, 424 U.S. at 335. Given the severity of Plaintiff's deprivation, the minimal possibility for error, and the administrative burden on Defendants incumbent with providing a full adversary proceeding in every instance of faculty discipline, the Court finds that Plaintiff rejected a name-clearing opportunity that exceeded the due process requirements. Finding no constitutional violation, the Court grants qualified immunity to Defendants with respect to Plaintiff's name-clearing opportunity claim. Therefore, the Court grants Defendants' Motion to Dismiss with regard to Plaintiff's § 1983 claims.

### D. EQUITABLE RELIEF

Qualified immunity exists only as to suits for damages, not as to suits for injunctive relief. *See Roberts v. Ward*, 468 F.3d 963, 971 (6th Cir. 2006). Plaintiff sues to enjoin Defendants: (1) to provide a meaningful opportunity to be heard with regard to Plaintiff's suspension from Graduate Faculty status; and (2) to grant a name-clearing opportunity. Incorporating the above analysis, the Court finds that Plaintiff did not possess a property interest in Graduate Faculty status. Thus, his suspension did not implicate due process. Second, Plaintiff rejected a name-clearing opportunity that comported with the baseline due process

requirements.  He is not entitled to another.  Therefore, the Court grants Defendants' Motion to Dismiss Plaintiff's claims for equitable relief.

## V.  CONCLUSION

For the foregoing reason, Defendants Motion to Dismiss Plaintiff's Complaint is **GRANTED**.  This disposes of all of Plaintiff's claims before this court.

**IT IS SO ORDERED.**


                                            __s/Algenon L. Marbley__
                                            **ALGENON L. MARBLEY**
                                            **UNITED STATES DISTRICT COURT**

**Dated: September 26, 2007**