# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAY S. GUNASEKERA, Ph.D., | : |
| Plaintiff, | : Case No. 06-CV-732 |
| v. | : |
| | : JUDGE MARBLEY |
| DENNIS IRWIN, Ph.D., *et al*, | : Magistrate Judge King |
| Defendants. | : |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants, Dennis Irwin, Ph.D., *et al.*'s Motion for Summary Judgment (Doc. 37). Plaintiff, Jay S. Gunasekera, Ph.D., filed a complaint against Defendants, Dean Dennis Irwin and Provost Kathy Krendl, for damages under 42 U.S.C. § 1983 and for injunctive relief, alleging that Defendants violated the Due Process Clause by: (1) suspending his Graduate Faculty Status without notice and an opportunity to be heard, and (2) denying him a name-clearing opportunity. Defendants contend that they are entitled to summary judgment at this point for two reasons: (1) they offered Dr. Gunasekera adequate process to satisfy the property interest he possesses in Graduate Faculty Status; and (2) they have recently offered Dr. Gunasekera "additional Constitutionally-adequate process" for both his property interest and his liberty interest in Graduate Faculty Status, rendering his claims moot. (SJ Mot. at 2.) For the reasons discussed below, Defendants' Motion is **DENIED**.

## II. BACKGROUND

## A. FACTUAL BACKGROUND

Dr. Gunasekera led a distinguished academic career as the Moss Professor of Mechanical Engineering at the Russ College of Engineering and Technology of Ohio University. For fifteen years, Dr. Gunasekera served as Chair of the Department of Mechanical Engineering. In 2004, a graduate student alleged plagiarism in the masters and doctoral theses submitted by candidates for advanced degrees in mechanical engineering. After two years, the allegations reached Provost Krendl, who told Dean Irwin (Dean of the Russ College of Engineering and Technology) to handle the situation. Dean Irwin instructed an administrator, Gary D. Meyer, and a distinguished retired faculty member, Hugh L. Bloemer, to investigate the plagiarism allegations.

On May 30, 2006, Meyer and Bloemer submitted their report ("Meyer/Bloemer Report") to Dean Irwin and Provost Krendl. The Meyer/Bloemer Report found that graduate students in the Department of Mechanical Engineering had been committing flagrant plagiarism in their theses for advanced degrees for over twenty years. The report specifically implicated three faculty members, including Dr. Gunasekera, for ignoring their ethical responsibilities and contributing to an atmosphere where issues of academic misconduct were ignored. On May 31, 2006, one day after receiving the Meyer/Bloemer Report, Provost Krendl held a press conference publicizing the report and naming Dr. Gunasekera as a participant in the scandal.

On June 21, 2006, Dean Irwin suspended Dr. Gunasekera from Graduate Faculty Status for three years.[1] Because of the suspension, Dr. Gunasekera is not permitted to advise or evaluate graduate student theses.

After the Meyer/Bloemer Report was made public, Dr. Gunasekera requested a name-clearing opportunity. He specifically demanded that Defendants go to the same efforts to publicize the name-clearing hearing as they had to publicize the initial press conference, permit him to cross-examine university officials, provide an impartial moderator, and hire a stenographer to record everything that happened at the hearing. Defendants refused to comply with Dr. Gunasekera's request, instead offering a name-clearing hearing at which he could be represented by his attorney, call witnesses, offer evidence, and testify on his own behalf. Dr. Gunasekera rejected this offer, characterizing the proposed name-clearing hearing as a sham proceeding.

On August 9, 2006, after refusing to participate in the name-clearing hearing proposed by Defendants, Dr. Gunasekera filed this lawsuit.

## B. PROCEDURAL BACKGROUND

Dr. Gunasekera's Complaint alleged that Defendants violated the Due Process Clause in two ways: by (1) suspending his Graduate Faculty Status without notice and an opportunity to be heard, and (2) denying him a name-clearing opportunity after the suspension. In response to Dr. Gunasekera's Complaint, Defendants filed a Motion to Dismiss under Federal Rule 12(b)(6).

---

[1] It has now been more than three years since Dr. Gunasekera's suspension went into effect. He made a written inquiry to Dean Irwin regarding reinstatement of his status on July 23, 2009. (Gunasekera Aff. at ¶ 1.) Mr. Gunasekera's counsel informed the Court at oral argument that his request for reinstatement was denied by the University in a letter which provided no explanation for the denial.

Defendants' Motion was based on four grounds: (1) sovereign immunity barred some of Dr. Gunasekera's claims; (2) Dr. Gunasekera waived his § 1983 claims by filing a defamation action in the Court of Claims; (3) Defendants were entitled to qualified immunity with regard to all claims for money damages; and (4) Dr. Gunasekera's claims for equitable relief failed to allege a due process violation upon which relief could be granted.

This Court granted Defendants' Motion to Dismiss, holding that: (1) sovereign immunity barred all of Dr. Gunasekera's claims, except his claims for prospective equitable relief against Defendants in their official capacities and his claims for money damages against Defendants in their individual capacities; (2) Dr. Gunasekera did not waive his § 1983 claims by filing a defamation action in the Court of Claims; (3) Defendants were entitled to qualified immunity on the § 1983 claims because Dr. Gunasekera did not have a property interest in his Graduate Faculty Status, and even if he had a liberty interest in the Status, he was afforded an adequate hearing; and (4) all of Dr. Gunasekera's additional claims for equitable relief were also barred by qualified immunity.

Dr. Gunasekera appealed this Court's dismissal of his Complaint, alleging that: (1) the name-clearing opportunity he was offered was inadequate because it was not public; (2) he had a property interest in his Graduate Faculty Status and was denied notice and an opportunity to be heard when the Status was suspended; and (3) a determination of whether his constitutional rights were clearly established for purposes of qualified immunity could not be decided on the undeveloped factual record that existed at the time. The Sixth Circuit reversed this Court's dismissal of Dr. Gunasekera's property- and liberty-based claims for injunctive relief, holding that he was entitled to a public name-clearing hearing, and remanding for this Court to determine

the required parameters of that hearing.  The Sixth Circuit affirmed this Court's judgment granting dismissal of Dr. Gunasekera's liberty-based damages claims based on qualified immunity.

After the Sixth Circuit issued its opinion, Defendants offered Dr. Gunasekera another name-clearing hearing, which would consist of:

> (1) a two-hour period in which Dr. Gunasekera may make a statement, allow others to speak and disclose documents under [his attorney's] direction;
> (2) a room open to the public will be provided at Baker University Center;
> (3) the university will provide a moderator who will open the meeting but will not speak to the university's position on the litigation or the events that gave rise to it; and
> (4) provision of notice of the event to The Post, The Athens News, The Athens Messenger, The Columbus Dispatch, and on the *Outlook* web site.

(S.J. Mot. Ex. 1 at 1.)

Dr. Gunasekera rejected this offer, and Defendants filed the instant Motion for Summary Judgment.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).  But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant therefore has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  The central inquiry

5

is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV. LAW & ANALYSIS

Defendants assert that their Motion for Summary Judgment is supported by two bases: (1) Dr. Gunasekera was already offered sufficient process to protect his property interest in his Graduate Faculty Status; and (2) the additional name-clearing opportunity offered after the Sixth Circuit's opinion was issued mooted Dr. Gunasekera's claims. The Court finds neither argument persuasive.

### A. PROPERTY INTEREST

"In order to establish a procedural due process claim in a § 1983 action, 'plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . ., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not

6

afford them adequate procedural rights prior to depriving them of their protected interest." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). The Sixth Circuit determined that Dr. Gunasekera had a property interest in his Graduate Faculty Status, based upon Ohio University's custom and the fact that no graduate faculty member had ever had his or her Graduate Faculty Status suspended or revoked. *Gunasekera v. Irwin*, 551 F.3d 461, 468 (6th Cir. 2009). The Sixth Circuit also found that Dr. Gunasekera was deprived of this protected interest after Defendants conceded at oral argument that Dr. Gunasekera "had not been offered either a pre- or a post-deprivation hearing." *Id.* at 468-69. The question remaining for this Court on remand is what process Dr. Gunasekera is now owed – namely, whether either of the proposed name-clearing hearings[2] satisfies due process.

### 1. Process Required

The Supreme Court has held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before his or her employment is terminated.[3] *Cleveland Bd. of*

---

[2]Dr. Gunasekera was initially offered a name-clearing hearing before the filing of this lawsuit. He rejected the offer, characterizing the proposed hearing as a sham procedure. After the Sixth Circuit issued its opinion reversing this Court's dismissal of Dr. Gunasekera's complaint, Defendants offered another hearing with additional procedural components. Dr. Gunasekera again rejected the offer.

[3]While the *Loudermill* line of cases deals with termination of employment rather than suspension of a particular employment status, the Court will analogize to the termination line of cases because the Sixth Circuit found that Dr. Gunasekera has a property interest in his Graduate Faculty Status.

7

*Ed. v. Loudermill*, 470 U.S. 532, 546 (1985).[4] This relatively minimal pre-termination requirement is coupled with a more extensive post-termination process. *Farhat v. Jopke*, 370 F.3d 580, 595-96 (6th Cir. 2004) ("Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the employee has received all the process due under the Constitution."). Importantly, "it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process." *Id*. at 596. The procedure provided need only be "reasonable and give the employee notice and an opportunity to participate meaningfully" in order to be "constitutionally adequate," and "where the employee refuses to participate in the post-termination proceedings, . . . the employee has waived his procedural due process claim." *Id*. Extensive post-termination process can make up for inadequate pre-termination process. *See Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990) (noting that the *Loudermill* decision relied heavily on the extensive post-termination proceedings provided to the plaintiff in that case, and observing that extensive post-termination proceedings were provided to the plaintiff before the court).[5]

---

[4]The Sixth Circuit has similarly held that "prior to termination of a public employee who has a property interest in his employment, the due process clause requires that the employee be given 'oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer.'" *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004) (quoting *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990)).

[5]Other circuits have required something akin to a full evidentiary hearing. *See, e.g.*, *Levine v. City of Alameda*, 525 F.3d 903, 906 (9th Cir. 2008) ("Because [the plaintiff's] due process rights were violated, it was not improper for the district court to order a full evidentiary hearing. . . . [The plaintiff] was entitled to a full post-termination hearing because there was no way to give [him] the process that he had been due, which was an opportunity to respond before the termination occurred."); *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001) (holding that a

## 2. Process Offered

Defendants have conceded that Dr. Gunasekera was provided neither a pre- nor a post-deprivation hearing. *Gunasekera*, 551 F.3d at 468-69 (noting that Defendants made such a concession at oral argument before the Sixth Circuit). Defendants now contend, in their Motion for Summary Judgment, that Dr. Gunasekera *was* offered a post-deprivation hearing that satisfied due process.[6] (S.J. Mot. at 4.) The originally proposed name-clearing hearing was to be held in the main conference room of Cutler Hall, attended by Provost Krendl, Dean Irwin, General Counsel for Ohio University, and a representative from the Ohio Attorney General's Office Court of Claims Defense Section. Dr. Gunasekera was informed that Provost Krendl and Dean Irwin would have the "authority to take any appropriate action(s) regarding Dr. Gunasekera" after listening to his presentation at the hearing. This hearing was proposed as a name-clearing hearing, to provide Dr. Gunasekera an opportunity to rebut the publicly tendered allegations that he neglected his ethical duties in failing to prevent plagiarism in the Mechanical Engineering Department.

As discussed in a separate section below, Defendants owe Dr. Gunasekera a public name-clearing hearing as a result of the liberty interest the Sixth Circuit found he had. Such a name-clearing opportunity, however, is distinct from the post-deprivation process he is owed under

---

pre-termination hearing need not be in front of a neutral decisionmaker, so long as "the state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator"); *Calhoun v. Gaines*, 982 F.2d 1470, 1476-77 (10th Cir. 1992) ("*Loudermill* also establishes that, in cases where pre-termination is less elaborate, a full-blown, adversarial post-termination hearing, held at a meaningful time, is necessary to determine the ultimate propriety of the discharge.").

[6]Defendants still concede that Dr. Gunasekera was never offered a pre-deprivation hearing. (S.J. Mot. at 4.)

9

*Loudermill* and *Farhat*. Dr. Gunasekera's refusal to participate in the offered name-clearing hearing does not represent a waiver of his procedural due process claim based upon his property interest in Graduate Faculty Status, because the process offered would not satisfy the post-deprivation requirements. Because Dr. Gunasekera was never given a pre-deprivation hearing, the post-deprivation due process requirements are more strict than they would be had a pre-deprivation hearing occurred. *Buckner*, 901 F.2d at 494. An offer to meet in a conference room and clear his name does not equate to the type of post-deprivation process Dr. Gunasekera is owed. The offered meeting was always presented as a name-clearing hearing; Defendants never informed Dr. Gunasekera that it would serve as his post-deprivation hearing to dispute the suspension of his Graduate Faculty Status.[7] Allowing Defendants to satisfy the *Loudermill* and *Farhat* post-deprivation due process requirements by alleging after the fact that the offered hearing was intended to serve not only as a name-clearing hearing, but also as a post-deprivation hearing, would effectively eliminate the separate procedures required when an employer fails to give an employee a pre-deprivation hearing.[8]

Defendants also note, in passing, that Dr. Gunasekera was offered an additional opportunity for post-deprivation process; namely, he was invited to re-apply for Graduate

---

[7]Defendants contend that the name-clearing hearing could serve two purposes – both to allow Dr. Gunasekera to clear his name, and to provide him an opportunity to challenge the suspension of his Graduate Faculty Status. Defendants have offered no evidence establishing that they intended the meeting to serve as his post-deprivation hearing, and it would be improper for the Court to draw that inference in favor of the party moving for summary judgment.

[8]The Sixth Circuit distinguished between a name-clearing hearing and a disciplinary hearing when evaluating the facts of this case: "A name-clearing hearing is not a venue for an employer to determine the proper punishment, but rather an opportunity for an individual to confront a public stigma that has already been imposed by an employer." *Guansekera*, 551 F.3d at 469 n.5.

Faculty Status. This seems to be an empty invitation, as Dr. Gunasekera's suspension was supposed to last for three years, at which point he would be re-evaluated, and it has been more than three years since his suspension went into effect. Additionally, Dr. Gunasekera submitted a written inquiry regarding his suspension, and his request was summarily denied. The offer to re-apply cannot be said to satisfy the *Loudermill* and *Farhat* post-deprivation requirements.

In sum, Defendants have failed to satisfy due process with regard to Dr. Gunasekera's property interest due process claim. As a result, summary judgment in their favor would be improper.

### B. LIBERTY INTEREST

#### 1. Process Required

In determining whether a public name-clearing opportunity is required, a court must apply the three-factor test established by the Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *Gunasekera*, 551 F.3d at 470. "This three-part balancing test requires [a court] to consider the following elements: '(1) the nature of the private interest affected – that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated.'" *Id.* (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005)). The Sixth Circuit, applying this test to the facts of this case, determined that "the university is required to offer [Dr.] Gunasekera a name-clearing hearing that is adequately publicized to address the stigma the university inflicted on him." *Gunasekera*, 551 F.3d at 471. The Sixth Circuit left it to this Court's discretion to determine the exact parameters of the required hearing, including the degree of publicity necessary. *Id.*

The Sixth Circuit noted the importance of publicity in this case:

> A name-clearing hearing with no public component would not address [the harm to Dr. Gunasekera] because it would not alert members of the public who read the first report that Gunasekera challenged the allegations. Similarly, if [Dr.] Gunasekera's name was cleared at an unpublicized hearing, members of the public who had seen only the stories accusing him would not know that this stigma was undeserved.

*Id*. at 470. Despite the need for publicity in this case, "a name-clearing hearing need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Chilingirian v. Boris*, 882 F.2d 200, 206 (6th Cir. 1989). *See also Quinn v. Shirey*, 293 F.3d 315, 321 (6th Cir. 2002) ("The purpose of a name-clearing hearing is to afford the aggrieved employee an 'opportunity to be heard to refute the charges disseminated against him.' The hearing 'need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid.'" (quoting *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997)).

Beyond establishing that a name-clearing hearing need only provide an opportunity for an employee to clear his or her name, the Sixth Circuit has left it to the trial courts to determine formal procedural requirements for such a hearing. *See, e.g.*, *Gunasekera*, 551 F.3d at 471 ("The exact nature of [the publicity requirement] depends on a fact-intensive review of the circumstances attending his case, and we leave to the district court the initial determination regarding the exact parameters of the name-clearing hearing due to [Dr.] Gunasekera.").[9]

---

[9]Other circuit courts have similarly left to the discretion of district courts the establishment of specific procedural requirements for name-clearing hearings. *See, e.g.*, *Lyons v. Barrett*, 851 F.2d 406, 411 (D.C. Cir. 1988) ("The discretion to tailor the conditions of a [name-clearing] hearing to a particular dismissal is properly vested in a district court. This court has stated previously that when a name-clearing hearing is called for, it is the district court's obligation 'to determine the precise nature of the name-clearing procedure that the [government]

District courts and courts of appeals in other circuits have taken varied approaches in establishing name-clearing hearing requirements. Courts generally agree that the purpose of a name-clearing hearing is not to challenge the decision to discharge or otherwise to discipline the employee, but rather to provide the employee with a public opportunity to clear his or her name. *See, e.g.*,

 *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989); *Boston v. Webb*, 783 F.2d 1163, 1165-66 (4th Cir. 1986)*; Campbell v. Pierce County*, 741 F.2d 1342, 1345 (11th Cir. 1984). Beyond that general agreement, however, courts have reached different conclusions regarding specific procedural requirements for name-clearing hearings.

For example, circuit courts are split regarding whether the entitlement to a name-clearing hearing includes the right to cross-examine adverse witnesses. The Fourth Circuit, upon balancing the three *Matthews v. Eldridge* factors, determined that a police officer who was discharged based upon allegations of bribery was not entitled to cross-examination at his name-clearing hearing. *Boston*, 783 F.2d at 1167 ("Our inquiry is limited to whether in the balance of interests, cross-examination was essential to avoid an impermissible risk of an incorrect decision that Boston had not satisfactorily refuted the reasons for his termination. We agree with the district court that cross-examination was not required here in view of the opportunity given and the nature of the interests involved."). Similarly, The Seventh Circuit held that a county assessment supervisor who was not reappointed to his position was not entitled to cross-examination at his name-clearing hearing. *Endicott v. Huddleston*, 644 F.2d 1208, 1216 (7th Cir.

---

must provide . . . .'" (quoting *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1113 (D.C. Cir. 1985)).

1980) ("The Board's failure to call witnesses whom plaintiff's counsel could cross-examine did not seriously impede plaintiff's opportunity to argue that the Board's charges were groundless and to support his contentions by calling his own witnesses and presenting his own evidence."). In contrast, the Tenth Circuit held that a non-tenured teacher who was fired amid rumors of immorality was entitled to cross-examine her accusers at her name-clearing hearing. *McGhee v. Draper*, 564 F.2d 902, 911 (10th Cir. 1977) ("[W]e agree that in the circumstances of this case due process required that the accusers of plaintiff, who were attacking her morality and fitness as a teacher, be heard only where plaintiff could confront and cross-examine them."). The Eleventh Circuit has also approved of a district court's decision to allow cross-examination at a name-clearing hearing. *Campbell*, 741 F.2d at 1346 (holding that due process requirements were satisfied where the plaintiff had "opportunity to hear and cross-examine all adverse witnesses and to attempt to rebut their claims of insubordination and mishandling of funds"). A survey of various circuits indicates that the name-clearing hearing process required in a given case depends heavily on the facts and circumstances surrounding an employee's termination or suspension.[10]

## 2. Process Offered

Defendants initially offered Dr. Gunasekera a name-clearing hearing to be held in a conference room and attended by Provost Krendl, Dean Irwin, General Counsel for Ohio University, and a representative from the Ohio Attorney General's Office Court of Claims

---

[10] A survey of academia supports the conclusion that there is no wide consensus regarding the procedural requirements of a name-clearing hearing. *See, e.g.*, Tracy M. Loos, *Name-Clearing Hearings, Gratuitous Remedies, and Common Law Writs of Certiorari – Are They Worth Their Weight in Gold?*, 22 S. Ill. U. L.J. 201, 209-11 (1997) (collecting cases); Harvey Brown & Sarah V. Kerrigan, *42 U.S.C.S. § 1983: The Vehicle for Protecting Public Employees' Constitutional Rights*, 47 Baylor L. Rev. 619, 641-44 (1995) (same).

Defense Section. The proposed meeting lacked the publicity required, given the public statements made disparaging Dr. Gunasekera. *Gunasekera*, 551 F.3d at 471. In response to the Sixth Circuit's opinion, Defendants offered Dr. Gunasekera a second name-clearing hearing. The second offered hearing featuring the following:

> (1) a two-hour period in which Dr. Gunasekera may make a statement, allow others to speak and disclose documents under [his attorney's] direction;
> (2) a room open to the public will be provided at Baker University Center;
> (3) the university will provide a moderator who will open the meeting but will not speak to the university's position on the litigation or the events that gave rise to it; and
> (4) provision of notice of the event to The Post, The Athens News, The Athens Messenger, The Columbus Dispatch, and on the *Outlook* web site.

(S.J. Mot. Ex. 1 at 1.) Dr. Gunasekera rejected this offer, on the grounds that the university was failing to provide any context for the hearing and would not allow him to cross-examine witnesses against him.

The Court is satisfied that the offered hearing is adequately "public" for purposes of due process. The hearing will take place in a prominent building on campus, in a room open to the public. Additionally and importantly, the University has agreed to provide notice of the hearing to six different media outlets.

The Court notes, however, that publicity alone does not necessarily satisfy due process. Dr. Gunasekera contends that he is also entitled to cross-examine University officials responsible for his discipline. Cross-examination is the cornerstone of any adversarial proceeding. The name-clearing hearing is not an adversarial proceeding; rather it is a proceeding in which the employee is provided an opportunity to clear his or her name publicly. *See Chilingirian*, 882 F.2d at 206. Indeed, this opportunity can be provided without adversarial proceeding processes.

*See Boston*, 783 F.2d at 1167. The Court is persuaded to adopt the reasoning of the Fourth[11] and Seventh[12] Circuits in holding that cross-examination is not required at Dr. Gunasekera's name-clearing hearing. Compelling the testimony of University officials and allowing Dr. Gunasekera, through counsel, to cross-examine them would transform this entitlement of notice and an opportunity to be heard into something resembling a full-blown trial, designed to determine whether the University properly disciplined Dr. Gunasekera. This is not the purpose of a name-clearing hearing. *See Rosenstein*, 876 F.2d at 395 ("[T]he process due . . . is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee."). The Court is unwilling to require the University to provide and participate in such an adversarial proceeding, where burdens of proof and other procedural requirements may be called into play. As a result, Dr. Gunasekera is not entitled to cross-examination at his name-clearing hearing.

Dr. Gunasekera also requests that a University official be present at the name-clearing hearing to supply factual information and provide context for the hearing. The University has offered a moderator who will open the meeting, but not address the University's position regarding the events leading up to the hearing. This moderator, while not required to present the University's position regarding its interactions with Dr. Gunasekera, must provide a factual statement regarding the events giving rise to the hearing before Dr. Gunasekera presents his evidence. The moderator need not be a University official.

---

[11]*See Boston*, 783 F.2d at 1167.

[12]*See Endicott*, 644 F.2d at 1216.

16

Aside from his requests for cross-examination and the presence of a University official to provide factual context for the hearing, Dr. Gunasekera does not object to the remaining substance of the University's offer. Therefore, with the modifications noted in this Opinion, the University shall provide Dr. Gunasekera with the name-clearing hearing it has offered. In sum, the University is ordered to provide Dr. Gunasekera a name-clearing hearing including the following elements:

> (1) a two-hour period in which Dr. Gunasekera may make a statement, allow others to speak and disclose documents under [his attorney's] direction;
> (2) a room open to the public will be provided at Baker University Center;
> (3) the university will provide a moderator who will open the meeting and provide a summary of the facts leading up to the hearing, but is not required to state the University's position on the events necessitating the hearing.
> (4) provision of notice of the event to The Post, The Athens News, The Athens Messenger, The Columbus Dispatch, and on the *Outlook* web site.

Because, prior to this Opinion, the Court had not provided the parties with the procedural requirements necessary for Dr. Gunasekera's name-clearing hearing, summary judgment is improper at this time.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**, and Defendants shall provide Dr. Gunasekera with the name-clearing hearing outlined in this Opinion.

**IT IS SO ORDERED.**

**/s Algenon L. Marbley**
**Algenon L. Marbley**
**United States District Judge**

**Dated: January 11, 2010**