IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JAY S. GUNASEKERA, Ph.D.,** : | |
| : | |
| **Plaintiff,** : | Case No. 06-CV-732 |
| : | |
| v. : | |
| : | **JUDGE MARBLEY** |
| **DENNIS IRWIN, Ph.D.,** *et al*, : | Magistrate Judge King |
| : | |
| : | |
| **Defendants.** : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff Jay S. Gunasekera, Ph.D.'s Motion for Partial Summary Judgment (Doc. 51).  For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

**II. BACKGROUND**

**A. FACTUAL BACKGROUND**

Dr. Gunasekera led a distinguished academic career as the Moss Professor of Mechanical Engineering at the Russ College of Engineering and Technology of Ohio University.  For fifteen years, Dr. Gunasekera served as Chair of the Department of Mechanical Engineering.  In 2004, a graduate student alleged plagiarism in the masters and doctoral theses submitted by candidates for advanced degrees in mechanical engineering.  After two years, the allegations reached Provost Krendl, who told Dean Irwin (Dean of the Russ College of Engineering and Technology) to handle the situation.  Dean Irwin instructed an administrator, Gary D. Meyer, and a distinguished retired faculty member, Hugh L. Bloemer, to investigate the plagiarism allegations.

On May 30, 2006, Meyer and Bloemer submitted their report ("Meyer/Bloemer Report") to Dean Irwin and Provost Krendl.  The Meyer/Bloemer Report found that graduate students in the Department of Mechanical Engineering had been committing flagrant plagiarism in their theses for advanced degrees for over twenty years.  The report specifically implicated three faculty members, including Dr. Gunasekera, for ignoring their ethical responsibilities and contributing to an atmosphere where issues of academic misconduct were ignored.  On May 31, 2006, one day after receiving the Meyer/Bloemer Report, Provost Krendl held a press conference publicizing the report and naming Dr. Gunasekera as a participant in the scandal.

On June 21, 2006, Dean Irwin suspended Dr. Gunasekera from Graduate Faculty Status for three years.[1]  Because of the suspension, Dr. Gunasekera is not permitted to advise or evaluate graduate student theses.

After the Meyer/Bloemer Report was made public, Dr. Gunasekera requested a name-clearing opportunity.  He specifically demanded that Defendants go to the same efforts to publicize the name-clearing hearing as they had to publicize the initial press conference, permit him to cross-examine university officials, provide an impartial moderator, and hire a stenographer to record everything that happened at the hearing.  Defendants refused to comply with Dr. Gunasekera's request, instead offering a name-clearing hearing at which he could be represented by his attorney, call witnesses, offer evidence, and testify on his own behalf.  Dr.

---

[1] It has now been more than three years since Dr. Gunasekera's suspension went into effect.  He made a written inquiry to Dean Irwin regarding reinstatement of his status on July 23, 2009.  (Gunasekera Aff. at ¶ 1.)  Mr. Gunasekera's counsel informed the Court at oral argument that his request for reinstatement was denied by the University in a letter which provided no explanation for the denial.

Gunasekera rejected this offer, characterizing the proposed name-clearing hearing as a sham proceeding.

On August 9, 2006, after refusing to participate in the name-clearing hearing proposed by Defendants, Dr. Gunasekera filed this lawsuit.

## B. PROCEDURAL BACKGROUND

Dr. Gunasekera's Complaint alleged that Defendants violated the Due Process Clause in two ways: (1) by suspending his Graduate Faculty Status without notice and an opportunity to be heard; and (2) by denying him a name-clearing opportunity after the suspension.  In response to Dr. Gunasekera's Complaint, Defendants filed a Motion to Dismiss under Federal Rule 12(b)(6). Defendants' Motion was based on four grounds: (1) sovereign immunity barred some of Dr. Gunasekera's claims; (2) Dr. Gunasekera waived his § 1983 claims by filing a defamation action in the Court of Claims; (3) Defendants were entitled to qualified immunity with regard to all claims for money damages; and (4) Dr. Gunasekera's claims for equitable relief failed to allege a due process violation upon which relief could be granted.

This Court granted Defendants' Motion to Dismiss, holding that: (1) sovereign immunity barred all of Dr. Gunasekera's claims, except his claims for prospective equitable relief against Defendants in their official capacities and his claims for money damages against Defendants in their individual capacities; (2) Dr. Gunasekera did not waive his § 1983 claims by filing a defamation action in the Court of Claims; (3) Defendants were entitled to qualified immunity on the § 1983 claims because Dr. Gunasekera did not have a property interest in his Graduate Faculty Status, and even if he had a liberty interest in the Status, he was afforded an adequate

hearing; and (4) all of Dr. Gunasekera's additional claims for equitable relief were also barred by qualified immunity.

Dr. Gunasekera appealed this Court's dismissal of his Complaint, alleging that: (1) the name-clearing opportunity he was offered was inadequate because it was not public; (2) he had a property interest in his Graduate Faculty Status and was denied notice and an opportunity to be heard when the Status was suspended; and (3) a determination of whether his constitutional rights were clearly established for purposes of qualified immunity could not be decided on the undeveloped factual record that existed at the time.  The Sixth Circuit reversed this Court's dismissal of Dr. Gunasekera's property- and liberty-based claims for injunctive relief, holding that he was entitled to a public name-clearing hearing, and remanding for this Court to determine the required parameters of that hearing.  The Sixth Circuit affirmed this Court's judgment granting dismissal of Dr. Gunasekera's liberty-based damages claims based on qualified immunity.

After the Sixth Circuit issued its opinion, Defendants offered Dr. Gunasekera another name-clearing hearing, which would consist of:

> (1) a two-hour period in which Dr. Gunasekera may make a statement, allow others to speak and disclose documents under [his attorney's] direction;
> (2) a room open to the public will be provided at Baker University Center;
> (3) the university will provide a moderator who will open the meeting but will not speak to the university's position on the litigation or the events that gave rise to it; and
> (4) provision of notice of the event to The Post, The Athens News, The Athens Messenger, The Columbus Dispatch, and on the *Outlook* web site.

(S.J. Mot. Ex. 1 at 1.)

Dr. Gunasekera rejected this offer, and Defendants filed a Motion for Summary Judgment.  This Court held oral argument on that Motion and issued an Opinion on January 11,

2010, denying the Motion. The Court ordered Defendants to provide Dr. Gunasekera with a name-clearing hearing outlined in the Opinion. Defendants filed a Notice of Appeal, but subsequently voluntarily withdrew the appeal. The court-ordered name clearing hearing took place on September 20, 2010.

Before he received his name clearing hearing, Gunasekera filed the instant Motion for Partial Summary Judgment, alleging that he was deprived of an adequate pre-deprivation opportunity to be heard regarding the termination of his Graduate Faculty Status.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative

evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV. LAW & ANALYSIS

Plaintiff asserts that he is entitled to partial summary judgment on his due process claim because Defendants failed to provide him with an adequate pre- or post-deprivation hearing. Since the Motion was filed, Defendants have provided a name-clearing hearing, as ordered by this Court. The Court will therefore consider Defendants' alleged failure to provide a pre-deprivation hearing.

"In order to establish a procedural due process claim in a § 1983 action, 'plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . ., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). Evaluating Dr. Gunasekera's allegations under the Rule 12(b)(6) standard for a motion to dismiss, the Sixth Circuit determined that Dr. Gunasekera had a property interest in his Graduate Faculty Status. The court based its decision on Ohio University's custom and the fact that no graduate faculty member had ever had his or her

Graduate Faculty Status suspended or revoked.  *Gunasekera v. Irwin*, 551 F.3d 461, 468 (6th Cir. 2009).  Under that same standard, the Sixth Circuit also found that Dr. Gunasekera was deprived of this protected interest after Defendants conceded at oral argument that Dr. Gunasekera "had not been offered either a pre- or a post-deprivation hearing."  *Id*. at 468-69.  Defendants now contend that using the summary judgment standard, under which all reasonable factual inferences must be drawn in their favor, the Court should find that material factual issues remain regarding both the existence of a property interest and the constitutionality of the process offered.

## A. EXISTENCE OF PROPERTY INTEREST

In ruling on Defendants' motion to dismiss, the Sixth Circuit found that Dr. Gunasekera's "extensive documentation of the ways in which [the suspension of his Graduate Faculty Status] affects his career suffices to allege that his suspension is a deprivation of property."  *Gunasekera*, 551 F.3d at 468.  Defendants contend that the Sixth Circuit's holding on that issue is not controlling here because that holding came within the context of a motion to dismiss rather than a summary judgment motion.  The Court agrees with Defendants, insofar as they assert that the Court is obligated to re-examine the facts, drawing all reasonable inferences in favor of defendants, to determine whether a property interest exists.[2]  The Court notes, however, that the Sixth Circuit held that Dr. Gunasekera had *alleged* enough to establish a property interest.  The issue for this Court, then, is whether any genuine issues of material fact remain regarding Dr. Gunasekera's allegations.

---

[2]When this Court considered Defendants' summary judgment motion on remand, Defendants conceded, for purposes of that motion, that Dr. Gunasekera had a property interest in his Graduate Faculty Status.

In convincing the Sixth Circuit that he had sufficiently alleged a property interest in his Graduate Faculty Status, Dr. Gunasekera relied on his belief "that Graduate Faculty Status is 'a right intrinsic' that a professor maintains so long as he or she satisfies the four criteria the University requires of its Graduate Faculty." *Id*. at 467. Those criteria are:

> (1) A Ph.D. in an appropriate engineering field or related area;
> (2) Group I faculty status at Ohio University;
> (3) having taught at least one year of advanced undergraduate or graduate-level courses within the five years immediately preceding nomination for appointment; and
> (4) having demonstrated currency in the nominee's field of specialization through publication of at least five technical/professional journal or refereed conference papers, textbooks, or monographs within the five years immediately preceding nomination for appointment; or having served as Principle or Co-Principle investigator on externally funded activities.

Gunasekera alleged that University custom mandated that as long as a professor maintained those four criteria, he would retain his Graduate Faculty Status. The Sixth Circuit noted that, at oral argument, counsel for Defendants conceded that Graduate Faculty Status had never before been rescinded or revoked. *Id*. Gunasekera also alleged that he lost both pay, in the form of a summer salary research stipend, and benefits, including a reduced teaching load. These allegations, taken together, were sufficient to convince the Sixth Circuit that Dr. Gunasekera had sufficiently alleged a protected property interest in his Graduate Faculty Status.

Defendants do not dispute the four required criteria for obtaining Graduate Faculty Status, nor do they dispute that Dr. Gunasekera satisfied all four conditions at the time of his suspension. They contend, however, that genuine issues of material fact remain regarding Dean Irwin's authority to rescind Graduate Faculty Status, as well as the ability of a professor without Graduate Faculty Status to hire students to conduct research.

As to Dean Irwin's discretion to revoke a professor's Graduate Faculty Status, he had never done so at the time of the Sixth Circuit's oral argument in this case. In fact, at that oral argument, defense counsel conceded that it had never been done. Defendants now urge the Court to consider the fact that, as a result of the plagiarism scandal involving Dr. Gunasekera, another implicated professor was also stripped of his Graduate Faculty Status. The Supreme Court has made clear that a government employer's policies and practices can create a legitimate claim of entitlement to continued employment. *See Perry v. Sindermann*, 408 U.S. 593, 602 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."); *see also Christian v. Belcher*, 888 F.2d 410, 416-17 (6th Cir. 1989) ("[A] nontenured state employee may prove such an interest by showing that the policies and practices of the employer justified his legitimate claim of entitlement to continued employment."). The Court is reluctant to adopt Defendants' urged reasoning, namely that, despite creating a legitimate expectation that Graduate Faculty Status would not be revoked so long as the professor continued to meet the four listed criteria, a University may invalidate that expectation by depriving multiple people of a property interest in violation of due process. The undisputed fact remains that, before Dr. Gunasekera was stripped of his Graduate Faculty Status, no other professor had ever suffered such a sanction. The University's subsequent stripping of another professor's Graduate Faculty Status cannot retroactively invalidate Dr. Gunasekera's legitimate expectation of retention of his Status.

Defendants contend that it is entirely possible for a professor without Graduate Faculty Status to hire students to perform research, and that Graduate Faculty Status is therefore not an

indispensable condition of employment. The ability to hire students is not, however, the only benefit Dr. Gunasekera contends stems from Graduate Faculty Status. He also testified during his deposition about the ability of professors with Graduate Faculty Status to carry a reduced teaching load, and the potential for a summer salary and the effect that salary could have on a professor's merit raise each year. Dr. Gunasekera testified that he has not gotten a summer salary since 2006, when his Graduate Faculty Status was rescinded. He also has not received a merit raise since that time, whereas before his Status was revoked, he consistently received the highest raise in the department almost every year. Defendants' unsupported allegation that a professor without Graduate Faculty Status could potentially hire research assistants is therefore not enough to create a genuine issue of material fact regarding Dr. Gunasekera's property interest.

### B. DEPRIVATION OF PROPERTY INTEREST

Having concluded that Dr. Gunasekera had a property interest in his Graduate Faculty Status, there is no doubt that Defendants deprived him of that interest. It is undisputed that Dr. Gunasekera's Graduate Faculty Status was rescinded.

### C. ADEQUACY OF PROCESS

The Supreme Court has held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before his or her employment is terminated.[3]  *Cleveland Bd. of*

---

[3]While the *Loudermill* line of cases deals with termination of employment rather than suspension of a particular employment status, the Court will analogize to the termination line of cases because it has already been determined that Dr. Gunasekera had a protected property interest in his Graduate Faculty Status.

*Ed. v. Loudermill*, 470 U.S. 532, 546 (1985).[4]  This relatively minimal pre-termination requirement is coupled with a more extensive post-termination process.  *Farhat v. Jopke*, 370 F.3d 580, 595-96 (6th Cir. 2004)   ("Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the employee has received all the process due under the Constitution.").  Importantly, "it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process." *Id*. at 596.  The procedure provided need only be "reasonable and give the employee notice and an opportunity to participate meaningfully" in order to be "constitutionally adequate," and "where the employee refuses to participate in the post-termination proceedings, . . . the employee has waived his procedural due process claim."  *Id.*   Extensive post-termination process can make up for inadequate pre-termination process.  *See Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990) (noting that the *Loudermill* decision relied heavily on the extensive post-termination proceedings provided to the plaintiff in that case, and observing that extensive post-termination proceedings were provided to the plaintiff before the court).[5]

---

[4]The Sixth Circuit has similarly held that "prior to termination of a public employee who has a property interest in his employment, the due process clause requires that the employee be given 'oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer.'" *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004) (quoting *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990)).

[5]Other circuits have required something akin to a full evidentiary hearing.  *See, e.g.*, *Levine v. City of Alameda*, 525 F.3d 903, 906 (9th Cir. 2008) ("Because [the plaintiff's] due process rights were violated, it was not improper for the district court to order a full evidentiary hearing. . . . [The plaintiff] was entitled to a full post-termination hearing because there was no way to give [him] the process that he had been due, which was an opportunity to respond before the termination occurred."); *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001) (holding that a

Defendants contend that Dr. Gunasekera waived his right to pursue a procedural due process claim because, during a February or March 2006 meeting with Dean Irwin, he agreed to cease advising graduate students. Dr. Gunasekera testified that he never agreed to forego his Graduate Faculty Status, and that he and Dean Irwin only discussed the revocation of his status as chair of the department at that meeting. No documentation was made of that meeting. Dr. Gunasekera further testified that he was not notified of the rescission of his Graduate Faculty Status until he received notification from Dean Irwin on June 21, 2006, shortly after the publication of the Meyer/Bloemer Report. Dean Irwin's deposition testimony corroborates Dr. Gunasekera's contention that he did not receive any documented notification of the revocation until after the Meyer/Bloemer Report was published. The Court is not convinced, based on Defendants' unsupported allegations, that Dr. Gunasekera agreed to the revocation of his Graduate Faculty Status and thereby waived his due process rights.[6]

Having determined that Dr. Gunasekera did not waive his due process rights, the Court must now determine whether the process offered to him by the University was constitutionally sufficient. The Court concludes that it was not. The only alleged process provided was the undocumented meeting with Dean Irwin, in conjunction with Irwin's "open door policy," under

---

pre-termination hearing need not be in front of a neutral decisionmaker, so long as "the state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator"); *Calhoun v. Gaines*, 982 F.2d 1470, 1476-77 (10th Cir. 1992) ("*Loudermill* also establishes that, in cases where pre-termination is less elaborate, a full-blown, adversarial post-termination hearing, held at a meaningful time, is necessary to determine the ultimate propriety of the discharge.").

[6]Defendants do not actually allege that Dr. Gunasekera explicitly agreed to revocation of his Graduate Faculty Status; instead, they allege that he agreed to stop advising graduate students. As discussed above, the ability to advise students is not the only benefit that accompanies Graduate Faculty Status.

which faculty members were free to discuss any issues with him. The availability of access to the Dean does not constitute an offer for a pre-deprivation opportunity to be heard. This is particularly true given that Defendants also did not originally provide Dr. Gunasekera with a post-deprivation hearing.[7] *See See Buckner*, 901 F.2d at 494. Indeed, defense counsel conceded at oral argument in the Sixth Circuit that Dr. Gunasekera was offered neither a pre- nor a post-deprivation hearing. No genuine issue of material fact exists regarding the constitutional inadequacy of the process offered to Dr. Gunasekera by Defendants.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**Algenon L. Marbley**
**United States District Judge**

**Dated: October 6, 2010**

---

[7]Defendants have subsequently provided Dr. Gunasekera with a name-clearing hearing, but only after being ordered to do so by this Court.