IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAY S. GUNASEKERA, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:06-CV-732 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| DENNIS IRWIN, Ph.D, *et al.*, | : | Magistrate Judge Norah McCann King |
| | : | |
| Defendants. | : | |

**ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Plaintiff's Motion for an Interim Award of Attorneys' Fees (Doc. 60). For the reasons that follow, the Motion is **GRANTED** in part.

**II. BACKGROUND**

**A. Factual History**

Plaintiff Jay S. Gunasekera, Ph.D., was the Moss Professor of Mechanical Engineering at the Russ College of Engineering and Technology of Ohio University. In 2004, a graduate student alleged that candidates for advanced degrees in mechanical engineering committed plagiarism in their masters and doctoral theses. Dean Dennis Irwin (Dean of the Russ College of Engineering and Technology) tasked Gary D. Meyer, an administrator, and Hugh L. Bloemer, a retired faculty member, with investigating the allegations. They submitted a report ("Meyer/Bloemer Report") on May 30, 2006, finding that graduate students in the Department of Mechanical Engineering had been committing flagrant plagiarism in their theses for advanced degrees for over twenty years. The Meyer/Bloemer Report implicated Dr. Gunasekera as well as two other

faculty members for ignoring their ethical responsibilities and contributing to an atmosphere where issues of academic misconduct were ignored.

One day later, Provost Kathy Krendl held a press conference in which she publicly disclosed the Meyer/Bloemer Report's contents, including the allegations with respect to Dr. Gunasekera. On June 21, 2006, Dean Irwin suspended Dr. Gunasekera from Graduate Faculty Status ("GFS") for three years. Because of the suspension, Dr. Gunasekera was not permitted to advise or evaluate graduate student theses.

After the Meyer/Bloemer Report was made public, Dr. Gunasekera requested a name-clearing opportunity. He specifically demanded that Dean Irwin and Provost Krendl go to the same efforts to publicize the name-clearing hearing as they had to publicize the initial press conference, permit him to cross-examine university officials, provide an impartial moderator, and hire a stenographer to record everything that happened at the hearing. Dean Irwin and Provost Krendl refused to comply with Dr. Gunasekera's request, instead offering a name-clearing hearing at which he could be represented by his attorney, call witnesses, offer evidence, and testify on his own behalf. Dr. Gunasekera rejected this offer, characterizing the proposed name-clearing hearing as a sham proceeding.

On August 9, 2006, after refusing to participate in the name-clearing hearing proposed by Dean Irwin and Provost Krendl, Dr. Gunasekera filed this lawsuit.

### B. Procedural History

Dr. Gunasekera's Complaint alleged that Defendants Dean Irwin and Provost Krendl ("Defendants") violated the Due Process Clause in two ways: (1) by suspending his GFS without notice and an opportunity to be heard; and (2) by denying him a name-clearing opportunity after

the suspension. In response to the Plaintiff's's Complaint, Defendants filed a Motion to Dismiss under Federal Rule 12(b)(6). Defendants' Motion was based on four grounds: (1) sovereign immunity barred some of the Plaintiff's claims; (2) the Plaintiff waived his § 1983 claims by filing a defamation action in the Court of Claims; (3) Defendants were entitled to qualified immunity with regard to all claims for money damages; and (4) the Plaintiff's claims for equitable relief failed to allege a due process violation upon which relief could be granted.

This Court granted Defendants' Motion to Dismiss on September 26, 2007, holding that: (1) sovereign immunity barred all of the Plaintiff's claims, except his claims for prospective equitable relief against Defendants in their official capacities and his claims for money damages against Defendants in their individual capacities; (2) the Plaintiff did not waive his § 1983 claims by filing a defamation action in the Court of Claims; (3) Defendants were entitled to qualified immunity on the § 1983 claims because the Plaintiff did not have a property interest in his GFS, and even if he had a liberty interest in the GFS, he was afforded an adequate hearing; and (4) all of the Plaintiff's additional claims for equitable relief were also barred by qualified immunity. *Gunasekera v. Irwin*, 517 F. Supp. 2d 999 (S.D. Ohio 2007) ("*Gunasekera I*").

The Plaintiff appealed this Court's dismissal of his Complaint, alleging that: (1) the name-clearing opportunity he was offered was inadequate because it was not public; (2) he had a property interest in his GFS and was denied notice and an opportunity to be heard when the Status was suspended; and (3) a determination of whether his constitutional rights were clearly established for purposes of qualified immunity could not be decided on the undeveloped factual record that existed at the time. The Sixth Circuit reversed this Court's dismissal of the Plaintiff's property- and liberty-based claims for injunctive relief, holding that he was entitled to a public

name-clearing hearing, and remanded for this Court to determine the required parameters of that hearing. *Gunasekera v. Irwin*, 551 F.3d 461, 471-72 (6th Cir. 2009) ("*Gunasekera II*"). The Sixth Circuit affirmed this Court's judgment granting dismissal of the Plaintiff's liberty-based damages claims based on qualified immunity. *Id*.

After the Sixth Circuit issued its opinion, Defendants offered the Plaintiff another name-clearing hearing. The Plaintiff rejected this offer, and Defendants filed a Motion for Summary Judgment. This Court held oral argument on that Motion and issued an Opinion on January 11, 2010, denying it. *Gunasekera v. Irwin*, 678 F. Supp. 2d 653 (S.D. Ohio 2010) ("*Gunasekera III*"). The Court ordered Defendants to provide the Plaintiff with a name-clearing hearing as outlined in the Opinion. *Id*. Defendants filed a Notice of Appeal, but subsequently voluntarily withdrew the appeal. The court-ordered name clearing hearing took place on September 20, 2010.

Before he received his name-clearing hearing, the Plaintiff filed a Motion for Partial Summary Judgment, alleging that he was deprived of an adequate pre-deprivation opportunity to be heard regarding the termination of his Graduate Faculty Status. The Court granted the Motion on October 6, 2010, concluding that no material factual disputes remained that the Plaintiff had a protected property interest in his GFS of which the Defendants deprived him without adequate pre-deprivation process. *Gunasekera v. Irwin*, Case No. 06-cv-732, 2010 U.S. Dist. LEXIS 106781 (S.D. Ohio Oct. 6, 2010) ("*Gunasekera IV*").

The case is currently set for a trial on April 25, 2011 on the damages due to the Plaintiff from the deprivation of his GFS. The Plaintiff has filed a Motion for an Interim Award of Attorneys' Fees in which he requests $120,023.66 in fees and costs before the Court has entered

final judgment on all issues; the award would reimburse the Plaintiff for fees he has already paid his attorneys. The Defendants do not question the Plaintiff's entitlement to fees as a prevailing party but argue that the award should not be made on an interim basis.

### III. LEGAL STANDARD

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b) ("Fees Act"), permits a court to award reasonable attorney's fees to the "prevailing party" in a civil rights action brought under 42 U.S.C. § 1983. A plaintiff is not entitled to any attorney's fees unless it is a "prevailing party." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989); *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006). Unless "special circumstances" exist, a district court *must* award attorney's fees to a prevailing party. *See, e.g., Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001).

A court has discretion to award interim attorney's fees even though litigation remains pending "when the court has entered a concrete order that 'determines substantial rights of the parties,' meaning 'when a party has prevailed on the merits of at least some of his claims.'" *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988) (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 757-58 (1980)). A showing that the moving party has prevailed on "'an important matter' in a case" that is "complex" and "of long duration" weighs in favor of granting an interim award. *Id*.

After finding that a party is entitled to an attorneys' fees award, the Court must then determine whether the hours claimed by the petitioner are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The "degree of the plaintiff's overall success goes to the reasonableness . . . not to the availability of a fee award." *Garland*, 489 U.S. at 793. When making a reasonableness determination, the Court should first calculate the "lodestar" amount, a multiple of the number of hours reasonably expended in the litigation and the reasonable hourly rate.

*Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433). The petitioning attorney has an obligation to weed out hours that are excessive, redundant, or otherwise unnecessary from his or her fee request, *Hensley*, 461 U.S. at 434, and bears the burden of proving that the number of hours expended was reasonable, *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). Once a party has established that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Imwalle*, 515 F.3d at 552 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)).

## IV. LAW AND ANALYSIS

### A. Entitlement to Award

The Defendants concede that the Plaintiff is a prevailing party entitled to recover attorneys' fees under the Fees Act. They contest the Plaintiff's entitlement to receive an interim award of fees. They raise two separate arguments: (1) that the Plaintiff is not entitled to an interim award of fees because he has not shown that he will suffer financial hardship if not reimbursed now; and (2) that deciding the proper amount of fees at this juncture would unnecessarily delay the resolution of the merits of this case.

The Court finds the Defendants' first argument to be without merit. Although Defendants are correct in pointing out that the Plaintiff has asserted financial hardship without offering supporting evidence, there is no requirement that a party prove financial hardship before being entitled to an interim award.[1] All that is required is a concrete order in which the moving party prevailed on the merits. *Webster*, 846 F.3d at 1036; *see also Hanrahan*, 446 U.S. at 757 ("It is

---

[1] In that regard, however, the Court notes, as the Plaintiff points out, that the number of plaintiffs for whom an out-of-pocket payment of over $100,000 would not pose a financial hardship is exceedingly small.

-6-

evident also that Congress contemplated the award of fees pendente lite in some cases. But it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal.") (citation omitted). In this case, the Plaintiff has obtained two such orders. He won a final declaration of the Defendants' liability for unconstitutionally depriving the Plaintiff of his interest in his GFS without due process, *see Gunasekera IV*, 2010 U.S. Dist. LEXIS 106781, and permanent injunctive relief on his entitlement to a name-clearing hearing, *see Gunasekera II*, 551 F.3d 461; *Gunasekera III*, 678 F. Supp. 2d 653. All that remains in this case is a determination by a jury of the amount of damages that the Plaintiff has suffered from the loss of his GFS, an amount that will be $1 or more. *See Al-Jabbar A'La v. Atwood*, 21 F.3d 427 (6th Cir. 1994) (concluding that a plaintiff is entitled to nominal damages of $1 even if he cannot show compensatory damages). The Court may therefore, in its discretion, choose to award the Plaintiff's attorneys fees on an interim basis.

The Defendants' second argument is more compelling, although ultimately unpersuasive. They contend that determining the award in this case – whether now or at the conclusion of the trial – will require more than the standard lodestar method because of the interconnectedness between the Plaintiff's counsel's work on this case and on a still-pending plagiarism case in the Ohio Court of Claims. Plaintiff's counsel indicated in their affidavits that they deleted from their billing statement all time that was solely or predominantly related to the state court lawsuit. Plaintiff's counsel did not delete time spent on state court discovery since, by stipulations of the parties filed in both federal and state court, the discovery conducted between the Plaintiff and the Defendants was to be applicable to both actions. Defendants nevertheless assert that the discovery must be reviewed in detail to determine what percentage was devoted to the federal litigation and what (non-reimbursable) percentage was devoted to the state court litigation.

Because this review cannot be conducted through the billing statements alone, additional discovery would be required. On that basis, Defendants conclude that litigation of the Plaintiff's fee request at this time would require postponement of the trial and a significant investment of time and money, an investment that would only need to be duplicated at the conclusion of the trial.

The Court sees three crucial flaws in the Defendants' argument. First, work performed in state court that is in furtherance of federal litigation may be reimbursed through the Fees Act. *North Carolina DOT v. Crest Street Community Council, Inc*., 479 U.S. 6, 15 (U.S. 1986) (holding that district courts have discretion to award fees for work performed in state or administrative proceedings where that work "'was both useful and of a type ordinarily necessary to advance the civil rights litigation'") (quoting *Webb v. County Bd. of Educ.*, 471 U.S. 234, 243-244 (U.S. 1985)). The burden is on the moving party to show that the work performed in the state court litigation was necessary to advance the federal litigation. *Gonzales v. Felker*, 964 F. Supp. 251, 256 (N.D. Ohio 1997). By the logic of *North Carolina DOT*, the type of detailed breakdown between federal and state discovery in this case that the Defendants presume to be necessary simply is not; all that the Plaintiff must show is that the work was necessary to advance the federal litigation. This the Plaintiff has done. According to the affidavits and the billing statements submitted by the Plaintiff, the only state court-related attorney hours for which the Plaintiff seeks reimbursement are those spent on discovery, which, by agreement of *both* parties, was to be doubly applicable to the state and federal litigation. The Plaintiff, moreover, submitted the affidavit of John S. Marshall in which he stated that "all of the discovery done was appropriate and necessary to the prosecution of Dr. Gunasekera's claims" and that he "would have asked the same questions and/or inquired about the same events whether or not there was a

pending defamation claim." The Court therefore concludes in its discretion that the hours claimed for the dual discovery are reimbursable through this action.

Second, the Defendants assert that detailed discovery will be needed to resolve the merits of this Motion. This type of discovery is not typical in a motion for fees. *See Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation."); *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995) ("A hearing is required only where the district court cannot fairly decide disputed questions of fact on the basis of affidavits and other documentation."); *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (noting that evidentiary hearings are only "[o]ccasionally" necessary). Nor is it necessary in this case, given that the Plaintiff has submitted detailed billing records and the Court has concluded that hours spent on the dual discovery do not need to be separated hour-by-hour into state and federal work.

Third, efforts spent identifying a reasonable fee award for time spent up to this point in the litigation will not need to be duplicated at the close of trial. When the Plaintiff inevitably files for a fee award after final judgment has been entered, there is no reason that the Court would have to revisit its interim award; the parties will simply litigate compensation for the hours spent after the last date of the billing records submitted in support of the Plaintiff's current Motion.

For all of these reasons, the Defendants' argument that the interests of judicial economy require a postponement of a decision on the request for fees until the conclusion of the case is without merit. The Court instead concludes that the Plaintiff's interest in recovering the funds to which he is entitled at this juncture, more than four years after he initiated this lawsuit, warrant an award of interim fees.

Having decided to grant an interim award of fees, the Court must next determine the reasonableness of the Plaintiff's request.

### B. Reasonableness

The first step in determining the reasonableness of the requested fees is to calculate the lodestar amount, or the reasonable hourly rate times the reasonable number of hours expended. *Imwalle*, 515 F.3d at 552. The Plaintiff has claimed the following fees and costs:

| Person | Position | Total Time | Rate | Total Fees |
|---|---|---|---|---|
| John S. Marshall | attorney | 206.40 | $350.00 | $72,240.00 |
| Louis A. Jacobs | attorney | 91.30 | $400.00 | $36,520.00 |
| Diane M. Seymour | paralegal | 2.50 | $110.00 | $275.00 |
| Kirsten L. Dell | paralegal | 7.00 | $110.00 | $770.00 |
| Tammy M. Mirgon | paralegal | 34.50 | $110.00 | $3,795.00 |
| **TOTAL** | | | | **$113,600.00** |

| EXPENSE | TOTAL |
|---|---|
| Copying | $1,394.04 |
| Deliveries | $73.12 |
| Depositions | $3,615.55 |
| Filing Fees | $805.00 |
| Long Distance | $0.11 |
| Postage | $65.27 |
| Transcripts | $415.20 |
| Travel | $55.37 |
| **TOTAL** | **$6,423.66** |

-10-

### 1. Reasonable Hourly Rates

The Court concludes that the hourly rates that the Plaintiff's attorneys are seeking are reasonable. The Plaintiff has provided affidavits supporting the reasonableness of the rates of $350 per hour for Mr. Marshall and $400 per hour for Mr. Jacobs. *See Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007) ("'[C]ourts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'") (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). In particular, Frederick M. Gittes has testified that civil rights attorneys with the type of distinguished reputations and substantial experience possessed by both of the Plaintiff's attorneys can command $250 to $500 per hour. He affirmed that Mr. Marshall's current rate of $400 per hour – more than the $350 per hour he charges the Plaintiff and is requesting in this petition – is "well within the fair and reasonable market value" for his services, and that Mr. Jacobs's rate of $400 per hour is "under the fair and reasonable market rate" for his services. In addition, both of these rates reflect the market value of their services as evidenced by the fact that the Plaintiff has been compensating his attorneys throughout the litigation as a fee-paying client. The rates sought by the Plaintiff are therefore both reasonable and adequately supported.

### 2. Hours Reasonably Expended

The next question is whether the hours expended are reasonable. The Court concludes that, with a few specific exceptions that will be discussed below, the hours expended are reasonable. The attorneys have demonstrated that they removed hours which were spent solely or predominantly on the state court litigation, complying with their obligation to weed out hours that are excessive, redundant, or otherwise unnecessary from the fee request. *Hensley*, 461 U.S. at 434. The attorneys also appear to have avoided "needless duplication of efforts" between the

-11-

Plaintiff's two attorneys. *Thirty Eight St .v. Chatur Corp.*, Case No. 1:08-CV-716, 2010 U.S. Dist. LEXIS 75247 (N.D. Ohio July 27, 2010). In the Court's experience, moreover, the hours expended are below the typical amount of work required by a case with this level of complexity, reflecting the efficiency of employing such experienced counsel. The Court can discern no reason to employ an across-the-board reduction in this case. *Project Vote v. Blackwell,* 2009 U.S. Dist. LEXIS 34571, at *6 (N.D. Ohio Mar. 31, 2009) (citing *Alliance Int'l, Inc. v. United States Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005)).

That said, there are two categories of hours that require individualized consideration. The first is the category of hours spent on media relations. This category includes the following, all billed by Mr. Marshall:

| | | |
|---|---|---|
| 0.30 hrs, $105 | June 16, 2006 | Communication call with *Wall Street Journal* reporter |
| 0.20 hrs, $70 | June 21, 2006 | Communication with *Wall Street Journal* reporter |
| 0.50 hrs, $175 | Aug. 28, 2006 | Communication with *Nightline* |
| 0.40 hrs, $140 | Aug. 29, 2006 | Communication with *Nightline*; *Dispatch* |
| 3.00 hrs, $1,050 | Sep. 1, 2006 | *Nightline* taping |
| 0.30 hrs, $105 | Sep. 7, 2006 | Communication with *Nightline* & *Athens News* |
| 0.30 hrs, $105 | Sep. 14, 2006 | Communication with *New York Times* |
| 0.10 hrs, $35 | Jan. 16, 2007 | Communication with *Athens Post* reporter |

The Defendants argue that time spent on media relations is not compensable, relying on *Gratz v. Bollinger,* 353 F. Supp. 2d 929, 941 ( E.D. Mich. 2005) (holding that attorneys cannot

be compensated for hours spent on public relations). *See also Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, Case No. 1:98-CV-479, 2008 U.S. Dist. LEXIS 25640, at *70-71 (W.D. Mich. Mar. 31, 2008) (citing *Gratz* and concluding that time spent on media relations is not compensable). The Plaintiff retorts that these hours reflect work essential to the litigation's goals, as media coverage exacerbated the Defendants' failure to provide an adequate name-clearing hearing. *Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992) (holding that public relations work "directly and intimately related to the successful representation of a client" is compensable through § 1988); *Jenkins v. Missouri*, 862 F.2d 677, 678-679 (8th Cir. 1988) (holding that fees could be awarded for political work in furtherance of the goals of litigation); *Meredith v. Jefferson County Bd. of Educ.*, Case No. 3:02CV-620-H, 2007 U.S. Dist. LEXIS 83460, at *6 (W.D. Ky. Nov. 9, 2007) ("The fees under § 1988 are awarded for legal work and not for public appearances, speeches and media relations not directly related to the litigation of the case.").

The Court need not resolve at this time whether fees for non-legal work are never compensable or are only compensable when essential to the outcome of litigation because the Plaintiff's attorneys' public relations work is not compensable under either standard.[2] In *Davis*,

---

[2] In *Gratz*, civil rights plaintiffs requested fees for public relations work their counsel performed, arguing that attorney advice on communicating with the media in a high-profile case was an essential part of litigation. 353 F.Supp. 2d at 942. Following the Third and Fourth Circuits, the district court denied the request, reasoning that a party's adversary should not be forced to pay for non-legal services simply because some private lawyers may offer legal and non-legal services to their clients. *Id.* (*citing Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d. Cir. 1995); *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994) ("The legitimate goals of litigation are almost always attained in the courtroom, not in the media.")).*See also Living Water Church of God v. Charter Twp. of Meridian*, Case No. 5:04-CV-06, 2005 U.S. Dist. LEXIS 36621, at *7 (W.D. Mich. Dec. 15, 2005) (denying request for fees for hours spent on public relations work). The Fourth Circuit's ruling in *Rum Creek Coal*, however, does not sweep as broadly as the district court's conclusion in *Gratz* that fees for public relations work are categorically disallowed. The Fourth Circuit in *Rum Creek Coal Sales* merely held that, in the circumstances of that case, the press efforts were aimed at minimizing

the Ninth Circuit distinguished between non-legal work that led directly to the plaintiffs' success – in that case, a consent decree – and non-legal work that "did not contribute, directly and substantially, to the attainment of appellees' litigation goals." 976 F.2d at 1545. In the case *sub judice*, the Plaintiff has argued that his counsel's non-legal work related to the relief he was seeking with respect to the name-clearing hearing. He has not, however, argued that this work affected the outcome of this litigation. The Court is aware of no case awarding fees for work that paralleled but did not contribute to a plaintiff's federal litigation. The 5.1 hours of Mr. Marshall's time, for a total of $1,785, spent on public relations work is therefore excluded from the fee award.

The second category requiring individualized consideration is for those hours spent on the fee petition. Fees incurred in "preparation of an original fee petition" are supplemental "fees for fees." Such supplemental hours should not exceed three percent of the award (the "Three Percent Rule") in the main case when the fees issue is decided without a trial or five percent of the award in the main case when there is a trial. *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986); *Bank One v. Echo Acceptance Corp,* 2009 U.S. Dist. LEXIS 35633, at *5 (S.D. Ohio Apr. 10, 2009). Plaintiff has requested a total of $3,055 for work performed on this fee petition. The total amount of attorneys' fees requested, excluding fees for public relations work and fees-for-

---

public relations damage rather than achieving litigation goals and therefore were not compensable. *Rum Creek Coal Sales*, 31 F.3d at 176. Its holding is therefore not inconsistent with that of the *Davis* court, whose case-by-case approach this Court finds preferable as it honors both the principle that civil rights attorneys' compensation should be comparable to that of private attorneys, *Blum v. Stenson*, 465 U.S. 886, 895 (U.S. 1984) (holding that reasonableness of fee request should be guided by "prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel"), and the principle that the Fees Act only authorizes compensation for work that contributed to the plaintiff's success, *Hensley*, 461 U.S. at 434 (holding that fees for unrelated and unsuccessful claims cannot be recovered because not "expended in pursuit of the ultimate result achieved") (quotation omitted).

fees, is $108,760. Three percent of this amount is $3,262.80. The Plaintiff's fees-for-fees request is therefore within the limits prescribed by the law and shall be awarded in full.

### 3. Lodestar

For the reasons already stated, the Court finds the hours worked and the rates charged by the Plaintiff's attorneys to be reasonable. Subtracting the fees for public relations work and including the fees-for-fees, the total lodestar amount owed to the Plaintiff's counsel is $111,815. Because the Defendants have not shown cause why this presumptively reasonable amount should not be awarded, *see Imwalle*, 515 F.3d at 552, the Court hereby **GRANTS** in part the Plaintiff's Motion for fees and orders that the Defendants shall compensate the Plaintiff for attorneys' fees in the amount of $111,815.

### C. Costs

The Plaintiff requests costs in the amount of $6,423.66. These costs have been adequately documented in the billing records, and the Defendants have not challenged their reasonableness. The Court therefore **GRANTS** the Plaintiff's Motion for costs and orders payment of the full amount of $6,423.66.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Plaintiffs' Motion for an Interim Award of Attorneys' Fees (Doc. 60). Pursuant to this finding, the Court **AWARDS** $111,815.00 in total fees. Of this total fees award, the Marshall and Morrow law firm shall receive the entire award. Additionally, the Court **AWARDS** total costs and expenses in the

amount of $6,423.66. Of this total costs and expenses award, the Marshall and Morrow law firm shall receive the entire award.

      **IT IS SO ORDERED.**

                                       **s/Algenon L. Marbley**
                                       **Algenon L. Marbley**
                                       **United States District Court Judge**

**DATED: February 28, 2011**